In re Christopher CLAXTON, Debtor.

Christopher Claxton, Plaintiff,

v.

United States of America, et al., Defendant.

Bankruptcy No. 00 B 13340.
Adversary No. 00 A 00893.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Feb. 5, 2002.

Joel A. Schechter, (Grossman Mitzenmacher & Schechter), Chicago, IL, for Movant or Plaintiff.

Faith Dolgin, Spaag, (Illinois Department of Revenue), Lara Ewens, (U.S. Department of Justice), for Respondent or Defendant.

## *MEMORANDUM OPINION ON MOTION OF STATE TO DISMISS COUNT II*

JACK B. SCHMETTERER, Bankruptcy Judge.

### *Facts and Background*

Plaintiff, Christopher Claxton, ("Plaintiff") filed a Chapter 7 bankruptcy petition on May 3, 2000. He scheduled $30,000 in back taxes owed to the State of Illinois (the "State") and $300,000 in back taxes owed to the United States of America ("United States"). Plaintiff received a general bankruptcy discharge on August 21, 2000, and his bankruptcy case was closed on August 25, 2000. He moved to reopen his bankruptcy on September 27, 2000, for the purpose of filing an action to declare dischargeability of the aforementioned taxes. The motion to reopen was granted and the instant Adversary Complaint was then filed.

Suit against the United States in Count I asserts that taxes due it were discharged because they were outside the exceptions to the general discharge under U.S.C. § 727 of taxes specified in 11 U.S.C. § 523(a)(1)(A) and (B). That Count is not the subject of this Memorandum Opinion, which focuses on Count II in which similar relief is sought on the same legal basis against taxes due to the State. Plaintiff prays for judgment declaring those State taxes discharged.

The State filed no claim in bankruptcy and did not willingly participate in the Bankruptcy proceeding in any way. It moved to dismiss Count II on the ground that it has sovereign immunity under the Eleventh Amendment of the United States Constitution from defending the suit in this court, citing supporting authority. Plaintiff argued in responsive briefs that under the Bankruptcy Clause of the Constitution Illinois and all states of the Union originally ceded their immunity in the area of bankruptcy law to the federal government. He further contends that: (1) Congress effected a valid abrogation of all state immunity under § 106(a) of the Bankruptcy Code, 11 U.S.C. § 106(a); and (2) alternatively, if the court finds that § 106(a) is invalid, Plaintiff's Complaint should be treated as a request for injunction under *Ex Parte Young,* 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908), even though no injunction is sought in the Complaint, no state officials are sued, there is no allegation of specific efforts to collect the State taxes after plaintiff was granted his discharge, and no allegations were made as required for injunction under Rule 7065 Fed.R.Bankr.P.

Article XIII, Sec. 4 of the Illinois Constitution of 1970 provisionally abolished sovereign immunity:

> Except as the General Assembly may provide by law, sovereign immunity in this State is abolished.

But with exceptions not relevant here, sovereign immunity was restored by the legislature with enactment of the Lawsuit Immunity Act, 745 ILCS 5/1 in 1972, which barred suit against the State in any of its courts with exceptions stated. Later, additional exceptions allowing judicial review of administrative decisions relating to taxes and taxpayer suits against the Illinois Department of Revenue were adopted and are discussed below. Therefore, the dispute here over meaning of jurisprudence under the Eleventh Amendment as to federal court cases against the State of Illinois must be resolved.

For reasons discussed below, the State's motion to dismiss is granted to the limited extent of striking Count II without prejudice so that Plaintiff may, if he can and so chooses, amend that Count to plead an action under *Ex Parte Young*. If he does not or cannot do so, Count II will be dismissed for lack of jurisdiction because the State's sovereign immunity was not waived here and is properly asserted.

## DISCUSSION

### I. SOVEREIGN IMMUNITY

*Overview of Eleventh Amendment Jurisprudence*

The Eleventh Amendment to the United States Constitution provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the states of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment restricts the power of the federal courts, but not the power of Congress which has power under the Bankruptcy Clause to enact uniform bankruptcy laws. U.S. Const. art. I, § 8, cl. 4. Sovereign immunity is not absolute. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). States may waive immunity, or Congress may abrogate states' immunity pursuant to the 14th Amendment. *MCI Telecomm. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 337 (7th Cir.2000).

Prior to the decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), it was generally held that Congress could abrogate sovereign immunity by exercising its Article I powers under the Constitution. *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 23, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (Congress has power to render states liable for money damages under its Article I powers); *Matter of Merchants Grain, Inc.*, 59 F.3d 630, 634–36 (7th Cir.1995) ("there was no constitutional basis for distinguishing between the plenary powers accorded Congress under the Fourteenth Amendment and those accorded under Article I.") *vacated and remanded sub nom for review consistent with Seminole Tribe, Ohio Agric. Commodity Depositors Fund v. Mahern*, 517 U.S. 1130, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996); *McVey Trucking, Inc. v. Secretary of State*, 812 F.2d 311, 314–23 (7th Cir.1987) (Congress may abrogate immunity under any of its plenary powers); *In re HPA Assoc.*, 191 B.R. 167, 174 (9th Cir. BAP 1995) (Congress has power under Bankruptcy Clause to abrogate sovereign immunity); *Mills Music, Inc. v. Arizona*, 591 F.2d 1278, 1285 (9th Cir.1979) (Congress can abrogate states' immunity under Copyright and Patent clause of Article I); *Peel v. Florida Dept. of Transpor-*

*tation,* 600 F.2d 1070, 1080 (5th Cir.1976) (Congress can abrogate states' immunity under its war powers in Article I).

However, in *Seminole Tribe,* a Supreme Court majority opinion held that Congress cannot abrogate immunity of states under its Constitutional Article I powers, but can only do so pursuant to § 5 of the Fourteenth Amendment. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 72, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The high court went even further in several subsequent majority opinions. In *Alden v. Maine,* in a non-bankruptcy case, it was held that states could raise sovereign immunity as a defense in state court to suits created by Congress under its Article I powers. *Alden v. Maine,* 527 U.S. 706, 748, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). The court also struck down federal legislation that authorized suits against states for patent infringement as unconstitutional. *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank,* 527 U.S. 627, 648, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999). In a further devolution of power to the states, another opinion limited the doctrine of constructive waiver of sovereign immunity. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). *See also MCI Telecomm. Corp. v. Illinois Bell Tel. Co.,* 222 F.3d 323, 339–40 (7th Cir.2000).

### Application of Section 106(a) after Seminole

Congress amended § 106 of the Bankruptcy Code in 1994 to clarify that sovereign immunity was abrogated in bankruptcy cases after the Supreme Court in *Hoffman v. Connecticut* held that Congress had to make its intent to abrogate states' immunity "unmistakably clear." *Hoffman v. Connecticut Dep't of Income Maintenance,* 492 U.S. 96, 101, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (citation omit-ted); See Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106. *In Hoffman,* a divided court had reserved judgment on whether Congress could abrogate states' immunity pursuant to its Article I powers. *Id.* at 104, 109 S.Ct. 2818.

Section 106(a) provides in relevant part that "notwithstanding any assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section." 11 U.S.C. § 106(a). Prior to *Seminole Tribe,* § 106(a) was read to permit the instant form of action against states, so that discharged debtors could obtain the comfort and protection of a judgment in bankruptcy specifically declaring the state tax debt to have been discharged. Although the Supreme Court has not directly dealt with the issue of sovereign immunity in bankruptcy, however, most opinions of lower courts issued since *Seminole Tribe* have held 11 U.S.C. § 106(a) unconstitutional. According to those opinions, § 106(a) fails the second prong of the two-pronged test used by the *Seminole* court to determine if Congress has abrogated sovereign immunity: (1) whether Congress unequivocally expressed its intent to abrogate immunity; and (2) whether Congress acted pursuant to a valid exercise of power. *Seminole Tribe,* 517 U.S. at 55, 116 S.Ct. 1114. Those opinions in recent years concluded that § 106(a) was enacted pursuant to Congress' powers under the Bankruptcy Clause, but under *Seminole Tribe* § 106(a) is invalid against the states because it was enacted under authority of Const. Article I. *In re Ellett,* 254 F.3d 1135, 1139 (9th Cir.2001); *In re Franceschi,* 268 B.R. 219, 223 (9th Cir. BAP 2001); *In re Mitchell,* 209 F.3d 1111, 1121 (9th Cir.2000); *In re Chandler,* 251 B.R. 872, 874 (10th Cir. BAP 2000); *In re Straight,* 248 B.R. 403, 416–17 (10th Cir. BAP 2000); *In re Sacred*

*Heart Hosp.*, 133 F.3d 237, 245 (3rd Cir. 1998); *Matter of Fernandez*, 123 F.3d 241, 245 (5th Cir.1997); *In re Creative Goldsmiths of Wash. D.C., Inc.*, 119 F.3d 1140, 1147 (4th Cir.1997); *In re Peterson*, 254 B.R. 740, 744 (Bankr.N.D.Ill.2000); *In re Service Merchandise Co., Inc.*, 265 B.R. 917, 922 (M.D.Tenn.2001).

Any doubt regarding this question was answered when the Supreme Court overturned a Seventh Circuit panel's decision in *Merchants Grain* which had upheld the constitutionality of § 106(a). In *Merchants Grain*, a Chapter 11 trustee brought a preference action to recover funds paid to farmers on behalf of a state agency. The state of Ohio asserted that the suit was barred by its Eleventh Amendment immunity. The bankruptcy court agreed and dismissed the complaint. The District court affirmed the bankruptcy court decision, but a Circuit panel reversed in *Matter of Merchants Grain, Inc.*, 59 F.3d 630, 631 (7th Cir.1995). That opinion held that § 106(a) was a valid abrogation of states' immunity under the Bankruptcy Code. *Id.* at 633–36. The case reached the Supreme Court shortly after the *Seminole Tribe* opinion was issued. The high court vacated the Seventh Circuit opinion in *Merchants Grain* without comment and remanded the case for further review consistent with *Seminole Tribe*. *Ohio Agric. Commodity Depositors Fund v. Mahern*, 517 U.S. 1130, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996). A recent opinion by a Seventh Circuit panel recently stated that it is now "inescapably clear" that Congress cannot abrogate states' immunity pursuant to its Article I powers. *MCI Telecomm. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 338 (7th Cir.2000).

Some courts have sought to find authority for adoption of § 106(a) under the 14th Amendment. *In re Wilson*, 258 B.R. 303 (Bankr.S.D.Ga.2001) (abrogation under § 106(a) valid under 14th Amendment); *Willis v. The State ex rel. Oklahoma Tax Comm'n*, 230 B.R. 619, 623 (Bankr. E.D.Okla.1999) (same); *In re Burke*, 203 B.R. 493, 497 (Bankr.S.D.Ga.1996) (§ 106(a) is constitutional pursuant to Congress' 14th Amendment power to enforce the Privileges and Immunities Clause) *aff'd sub nom without reaching issue of 106(a) by In re Burke*, 146 F.3d 1313 (11th Cir.1998); *In re Southern Star Foods, Inc.*, 190 B.R. 419, 426 (Bankr.E.D.Okla. 1995) (although § 106(a) was amended pursuant to Article I such amendments are enforceable under the 14th Amendment). The opinions finding § 106(a) to have been issued or otherwise enforceable under authority of the 14th Amendment would appear unsupported by the current requirements in Supreme Court jurisprudence limiting authority under the 14th Amendment to statutes specifically adopted under authority of that Amendment, *City of Boerne v. Flores*, 521 U.S. 507, 519, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), and deemed appropriately so adopted. *Cf. Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 89, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (abrogation of state's immunity invalid because Congress never identified problem that the statute was aimed at remedying); *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 672, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (statute invalid because it was not enacted to protect property rights protectible under the Due Process Clause of the 14th Amendment); *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 640, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999) (statute invalid because Congress failed to show statute was needed to remedy past patent infringement by states). The strict standards currently set for use of the 14th Amendment have severely narrowed the power of Congress to use that authority to

block use of state immunity. *City of Boerne*, 521 U.S. at 519, 117 S.Ct. 2157 (Congress' power under the 14th Amendment extends only to enforcing provisions of the 14th Amendment). It cannot be found under those standards that § 106(a) was enacted pursuant to the 14th Amendment. *See also Matter of Fernandez*, 123 F.3d at 245 and *In re Tri–City Turf Club, Inc.*, 203 B.R. 617, 620 (Bankr.E.D.Ky. 1996).

In the wake of *Seminole Tribe*, courts have struggled to follow that opinion while maintaining integrity of the bankruptcy system. *See In re Collins*, 173 F.3d 924, 930 (4th Cir.1999) (noting that the states' ability to avoid the effect of a bankruptcy court's discharge order seriously undermines the bankruptcy system). It has been asserted that the *in rem* jurisdiction of bankruptcy courts over debtors and their estates is the source of jurisdiction to render judgments on dischargeability of state tax claims, but not a source of jurisdiction over the state. See *Collins*, 173 F.3d at 929 which is distinguished from present case because only a motion to reopen the bankruptcy was presented and no Adversary case was filed against the State, and therefore it was held that no "suit" was filed against the state. *See also Maryland v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777 (4th Cir.1997) (which barred an Eleventh Amendment challenge of the state of Maryland to confirmation of a Chapter 11 plan that contained a tax exemption finding under 11 U.S.C. § 1146(c) because the confirmation process was not a "suit" against the state.) However, facts and pleadings presented in *Collins* and *Maryland* are not presented here, and as discussed below the Adversary Complaint filed here is a suit against Illinois.

A panel opinion in the Seventh Circuit has stated that a state has two choices when confronted with a dischargeability action: it may do nothing, in which case it will be bound by the discharge entered in the bankruptcy court; or the state may waive its immunity and appear in bankruptcy court if it wishes to share in the debtor's estate. *In re Platter*, 140 F.3d 676, 680 (7th Cir.1998). But that view does not provide guidance as to how the discharge of a tax debt can be enforced against a state that opts not to participate in the bankruptcy proceedings. *See* Leonard H. Gerson, *A Bankruptcy Exception to the Eleventh Amendment: Limiting the Seminole Tribe Doctrine*, 74 AM. Bankr. L.J. 1, 19 (2000); *See also In re Burkhardt*, 220 B.R. 837, 849–50 (Bankr.D.N.J. 1998) (held that the bankruptcy court has jurisdiction to confirm plan discharging debt to state but no power to enforce its judgment against state because of state's Eleventh Amendment immunity). That is the issue presented here because the State did not file a claim and did not seek any relief in bankruptcy except dismissal of this suit against it.

Most recently, a Bankruptcy Appellate Panel ("BAP") of the Sixth Circuit held that because states ceded their sovereign immunity over matters relating to bankruptcy law through agreeing to the Bankruptcy Clause in U.S. Const. art. I, § 8, cl. 4, there was no need for Congress to abrogate states' immunity under § 106(a). *In re Hood*, 262 B.R. 412 (6th Cir. BAP 2001). The *Hood* opinion asserted that while it had to apply the analytical framework of *Seminole Tribe*, it was not bound by the "narrow" holding of that opinion which did not in its ruling address sovereign immunity in the context of bankruptcy law. *Id.* at 423. After reviewing Hamilton's Federalist Papers No.'s 81 and 32, the BAP opinion concluded that states ceded their sovereignty over bankruptcy law when they formed the Union. *Id.* at 417–

19. Further, the opinion cited a long line of cases demonstrating that states have been subjected to federal bankruptcy law. *Id.* at 419–23.

Plaintiff relies strongly on *Hood* for its assertion that Illinois and other states ceded their sovereign immunity in matters of bankruptcy law through adoption of the Constitution. (Response of Plaintiff to Motion to Dismiss at ¶¶ 6–7.) The state counters that under *Seminole Tribe* and its progeny Congressional power over bankruptcy matters is limited to legislative authority to define rights, but not power to subject states to private suits in federal courts. (Reply Brief In support of State of Illinois' Motion to Dismiss at p. 6).

Did the Framers only intended for states to surrender their legislative sovereignty in substantive bankruptcy law to the federal government, not their judicial sovereignty over enforcement of rights under bankruptcy law? Given the disparate bankruptcy laws among the states before adoption of the Constitution as described in *Hood,* that opinion had basis to reason that the Framers not only intended to empower the national government to create a national bankruptcy system, but also to empower federal courts to enforce rights under that system. *Hood,* 262 B.R. at 416–18. This view is buttressed by reasoning in Hamilton's Federalist No. 32 which supports the view that the states ceded their immunity in areas where the retention of immunity would be inimical to the power of the federal government over the same area. *Hood,* 262 B.R. at 418; The Federalist No. 32 (Alexander Hamilton).

Debtor therefore argues that bankruptcy law is an area where an effective federal system requires both uniform rules and results, and which precludes a broad assertion of immunity by states. Further, it was formerly held by the Supreme Court that sovereignty cannot be partially divested over a given area of law. As one Supreme Court opinion stated, "the Constitution does not carve out express elements of state sovereignty that Congress may not employ its delegated powers to displace." *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 550, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Thus, the argument concludes, once the states ceded sovereignty over bankruptcy matters to Congress through the Constitutional Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4, in that area no state sovereign immunity remained.

The State's brief counters that argument with the suggestion that absence of an express surrender of immunity from judicial authority in the Constitution shows that states did not intend to give Congress the power to subject states to private suits in federal courts. Hamilton's Federalist Papers can be read to find an argument that the Founders intended states to retain sovereignty in certain areas while ceding sovereignty in other areas in order to form a national government. This structure was implemented by the Const. 10th Amendment. Inherent in our federal system is the division of power between Congress and the states, and therefore it was unnecessary for the Framers to flag within the Constitution each point at which states ceded or retained their immunity to private suits. See *Blatchford v. Native Village,* 501 U.S. 775, 781, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991) (Eleventh Amendment not applicable where states surrendered their sovereignty as part of the Constitutional Convention (quoting Federalist 81)). Thus, goes the argument, absence of explicit Constitutional language subjecting states to suits in federal courts does not mean that they did not cede their sovereignty in bankruptcy matters.

Debtor responds that the Framers were certainly aware that Congress might well try to place authority to enforce bankruptcy law, including private suits against states, in Article III federal courts. Yet there is nothing in the Eleventh Amendment or anywhere else in the Constitution that limits the scope of the "case or controversy" jurisdiction of those courts. *McVey*, 812 F.2d at 317 (Eleventh Amendment is not a general limitation on federal court jurisdiction). Moreover, Hamilton wrote on how to demarcate the cession of sovereignty in Federalist No. 32 where he discussed the surrender of sovereignty over naturalization. The *Hood* BAP Panel reasoned that it should equate the cession of state sovereignty over naturalization with the cession of state power to establish a uniform bankruptcy system. *Hood*, 262 B.R. at 418–19.

As noted earlier, the State's position is that the Eleventh Amendment and recent jurisprudence limits Congressional power to abrogate states' immunity under the Bankruptcy Code, while it does not limit the legislative power of Congress in bankruptcy. *Seminole Tribe*, which the State and most current jurisprudence in this field relies upon, construed the Eleventh Amendment as a limitation on judicial power of Article III courts but not a limitation on Congress. *Seminole Tribe*, 517 U.S. at 67–68, 116 S.Ct. 1114. This position is consistent with the Constitution's Supremacy Clause making federal substantive law supreme over any possible state laws and binding state judges to federal law even if in conflict with state law. U.S. Const. art. VI.

### Conclusion as to Sovereign Immunity

Despite the long list of decisions prior to *Seminole Tribe* that upheld authority of Congress to subject states to jurisdiction of bankruptcy courts, *Cf., Hood*, 262 B.R. at 419–23, *Seminole Tribe* departed from the rational of those cases by relying on reasoning in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). A broad penumbra of meaning is now seen to infuse the Eleventh Amendment despite its more limited wording. *Seminole Tribe*, 517 U.S. at 64–69, 116 S.Ct. 1114; *McVey*, 812 F.2d at 317–19 (questioning the validity of the reasoning in *Hans* ).

■ Justice Scalia opined when dissenting in *Union Gas* where he grappled with these issues relating to the Commerce Clause that this question requires a close call. *Union Gas*, 491 U.S. at 34, 109 S.Ct. 2273. Notwithstanding the view of the *Hood* BAP panel that a 5–4 majority in the Supreme Court made the wrong call in *Seminole Tribe* and its progeny, lower federal courts must bow to the weight of the precedent of that and later Supreme Court majority opinions. The central holding of those opinions was that Congress cannot abrogate states' immunity to private suits in federal courts by use of Const. Article I powers. Consistent with the holding of *Seminole Tribe*, and its progeny earlier cited, it must be concluded under current Supreme Court jurisprudence that § 106(a) of the Bankruptcy Code is unconstitutional. The five justices who have lead that sharp change in jurisprudence may have also lead a change in the theory and nature of our federal Union,[1] but the rule of law and respect for *stare decisis*

---

1. Compare views expressed by four out of five Justices in *Chisholm v. Georgia*, 2 Dall. 419, 2 U.S. 419, 1 L.Ed. 440 (1793) rejecting the concept of state sovereign immunity shortly after the Constitution was adopted:

    Whoever considers, in a combined and comprehensive view, the general texture of the constitution, will be satisfied, that the people of the United States intended to form themselves into a nation for national purposes. They instituted for such purposes, a national government, complete in all its parts, with powers legislative, executive, and judiciary; and in all those powers

compels lower federal judges to follow where they have lead so long as that view prevails.

## II. POSSIBLE RELIEF IN ILLINOIS COURTS

■ The State contends that the only forum that can hear the present Adversary issue to enforce the Debtor's discharge is an Illinois state court with authority to do so under state law. As earlier noted, one Supreme Court holding cast doubt as to whether a private person can vindicate federally created rights against a state in a state court. *See Alden v. Maine,* 527 U.S. 706, 748, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) ("we hold that the powers delegated to Congress under Article I of the United States Constitution do not include the pow-

er to subject nonconsenting states to private suits for damages in state courts."). However, *Alden* did not involve bankruptcy, and the earlier analysis supports abrogation of state immunity by the Bankruptcy Clause for bankruptcy rights, even if not for enforcement of those rights. That means that bankruptcy rights may be enforced in Illinois courts before judges sworn to uphold the Constitutional supremacy of federal law.

Illinois law provides Plaintiff with several opportunities to assert his bankruptcy discharge in Illinois courts.[2] First, he may seek a rehearing (or original hearing) from the Department of Revenue (the "Department"), unless the tax liability has been reduced to judgment. Ill. Admin. Code tit. 86, § 200.175.[3] The Department of Reve-

---

extending over the whole nation. It is congruous, that, with regard to such purposes, any man, or body of men, any person, natural or artificial, should be permitted to claim successfully an entire exemption from the jurisdiction of the national government? Would not such claims, crowned with success, be repugnant to our very existence as a nation?

*Id.,* 2 U.S. at 453, 1 L.Ed. at 455 (J. Wilson) ... [A] * * * at the revolution, the sovereignty devolved on the people; and they are truly the sovereigns of the country ... ... Sovereignty is the right to govern ... In Europe the sovereignty is generally ascribed to the prince; here it rests with the people ... There princes have personal powers, dignities, and pre-eminences, our rulers have none but official; nor do they partake of the sovereignty otherwise, or in any other capacity, than as private citizens.

...

[Sovereign immunity of a state from suit] would not correspond with the equal rights we claim; with the equality we profess to admire and maintain, and with that popular sovereignty in which every citizen partakes. *Id.* 2 U.S. at 471, 1 L.Ed. at 462–63 (Jay, CJ) The second ruling in *Chisholm* that allowed suit against the state of Georgia by a nonGeorgia citizen, was later expressly overturned by the Eleventh Amendment which did not by

its terms overturn the ruling on sovereign immunity.

2. General Income Tax procedures under Illinois law are outlined in the Illinois Administrative Code at Ill. Admin. Code. tit. 86, § 100.900. Subsection (c) discusses protest procedures and provides in relevant part:

The taxpayer has 60 days (150 days if the tax payer is outside of the United States) after the issuance of a Notice of Deficiency to submit a proper protest to the Audit Review Division. Failure to properly protest the Notice of Deficiency within the 60(150) day period results in the automatic assessment of the tax, and penalty shown therein.

A state income tax lien arises in favor of the state on the date the taxes are assessed and continues until the liability is satisfied or extinguished by the state's failure to file a notice of lien within three years. 35 ILCS 5/1101 (b,d); *In re Nowicki,* 202 B.R. 729, 738 (Bankr.N.D.Ill.1996). In addition to the protest procedure in 35 ILCS 5/908, the taxpayer can seek administrative review (35 ILCS 5/1201) before a Circuit Court in the county where he or she resides, or in Cook County if the taxpayer does not reside in the state. 35 ILCS 5/1202.

3. *But see Cook III v. Department of Revenue,* 281 Ill.App.3d 171, 217 Ill.Dec. 224, 229, 666

nue has discretion whether to grant this hearing since the period for review as a matter of right has expired. *Id.* If the Department refuses to grant a hearing or if Plaintiff's claim is denied at a hearing, Plaintiff can then seek administrative review and declaratory judgment in Cook County Circuit Court. 35 ILCS 5/1201.

Additionally, Plaintiff could bring suit under the Illinois Taxpayers' Bill of Rights Act 20 ILCS 2520/5, which allows suits against the State of Illinois for violations of the state's tax laws and regulations. Plaintiff may argue that the State's failure to abate the assessment against him is a violation of Ill. Admin. Code. tit. 86, § 205.20(c) which requires the state to abate taxes that are assessed erroneously. *See also* 20 ILCS 2520/6 (requiring Department to review all liens to assure they are correct). The State's brief concedes here that Illinois is subject to the "substantive application of the Bankruptcy Code," and Plaintiff could contend that any attempt by the State to collect the discharged taxes violates Department regulations. Thus, Plaintiff can assert his bankruptcy discharge under Illinois law and in Illinois courts if he chooses to do so or if the State begins collection efforts.

### III. POSSIBLE RELIEF UNDER EX PARTE YOUNG

Justice O'Connor (one of five justices with the majority in recent sovereignty opinions) has observed that *Ex Parte Young* remains viable and authorizes a procedure in federal courts to prevent state officials from violating federal law. *New York v. United States,* 505 U.S. 144, 179, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992).

Under *Ex Parte Young,* one may seek equitable relief to enjoin a state official from engaging in conduct that violates federal law. *Ex Parte Young,* 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see also MCI Telecomm. Corp. v. Illinois Bell Tel. Co.,* 222 F.3d at 345 and *In re Ellett,* 254 F.3d 1135, 1138 (9th Cir. 2001). The relief sought must be prospective, and the federal official must be connected with the conduct that a party seeks to enjoin. *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex Parte Young,* 209 U.S. at 157, 28 S.Ct. 441. The *Ex Parte Young* doctrine was based on the view that suit against a state official acting in his or her official capacity is not a suit against the state because the state cannot authorize its officials to violate federal law. *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 269–70, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Ex Parte Young,* 209 U.S. at 159–60, 28 S.Ct. 441. Thus, the doctrine is rooted in the Supremacy Clause of the Constitution, U.S. Const. art. VI. *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *MCI,* 222 F.3d at 345.

*Ex Parte Young* is limited in certain respects. It cannot be used to enjoin violations of state law. *MCI,* 222 F.3d at 345 n. 13 (citation omitted). Nor can it be used to circumvent a detailed remedial scheme contained in a federal statute. *Seminole Tribe,* 517 U.S. at 74, 116 S.Ct. 1114. Nor can the doctrine be used to intrude upon a state's "special sovereignty interests." *Coeur d'Alene Tribe,* 521 U.S. at 281, 117 S.Ct. 2028 (*Ex Parte Young* could not be used to bar state from asserting rights over its lands and waterways). In light of *Coeur d'Alene,* at least one commentator has opined that it is arguable

N.E.2d 893, 898 (2d App.Dist.1996) holding that a final assessment by the Department

constitutes a judgment.

whether *Ex Parte Young* can be used to enjoin a state official from collecting discharged taxes. See Kenneth Klee, James O. Johnston & Eric Winston: *State Defiance of Bankruptcy Law*, 52 Vand. L.Rev. 1527, 1571–72 (1999). But panels from the Seventh and Ninth Circuits have recently held that the exception to *Ex Parte Young* articulated in *Coeur d'Alene* should be narrowly construed and that the holding from that case is limited to its facts. *MCI*, 222 F.3d at 347–48; *Duke Energy Trading and Marketing, L.L.C. v. Davis*, 267 F.3d 1042, 1053–55 (9th Cir.2001) (narrow exception under *Coeur d'Alene* applies to specific relief sought, not to broad categories of core state interest).

Opinions in several bankruptcy cases have used *Ex Parte Young* to subject states to discharge orders entered in a bankruptcy case. See *In re Franceschi*, 268 B.R. 219, 224 (9th Cir. BAP 2001) (bankruptcy court can use Ex Parte Young to prevent violation of bankruptcy law); *In re Lenke*, 249 B.R. 1 (Bankr.D.Ariz.2000); *In re Wilson*, 246 B.R. 600 (Bankr. E.D.Ark.2000); *In re Richmond Health Care, Inc.*, 243 B.R. 899 (Bankr.S.D.Fla. 2000); *In re Pace*, 2000 WL 337599, Nos. 99–17529DWS, 99–0838 (E.D.Pa.2000).

In *In re Ellett*, 254 F.3d 1135 (9th Cir. 2001), the Ninth Circuit upheld a bankruptcy court decision that allowed a debtor to invoke *Ex Parte Young* to enjoin the Director of California's Tax Board from collecting allegedly discharged taxes. The 9th Circuit opinion in *Ellett* rejected the state's assertion that it was immune under the Eleventh Amendment from suit against that official, and distinguished its earlier opinion in *In re Mitchell*, 209 F.3d 1111 (9th Cir.2000), where the state rather than an official was sued to enforce the discharge.

█ Plaintiff contends that the present case is analogous to *Ellett*, asserting that even if the court deems § 106(a) of the Bankruptcy Code to be unconstitutional, he should still prevail under *Ex Parte Young*. But Plaintiff's reliance on *Ellett* is misguided because that case is clearly distinguishable from the present case as pleaded in Count II. In *Ellett*, the suit was filed against the Director of the state tax agency. The debtor in that case also sought prospective relief to enjoin that official from violating the Bankruptcy Code by seeking to recover discharged taxes. *Ellett*, 254 F.3d at 1144. Here, the Plaintiff has filed suit against the State of Illinois, which for reasons earlier stated cannot be compelled to answer the summons. The current case as pleaded fits squarely within the facts of *In re Mitchell*, as the state correctly contends. In *Mitchell*, the court considered several factors to conclude that the case was a suit against the state: (1) the debtor's adversary invoked the court's *in personam* jurisdiction over the state; (2) the state was compelled to answer the debtor's summons; and (3) a decision in favor of the debtor would deprive the state of funds otherwise due it. *Mitchell*, 209 F.3d at 1117.

Paradoxically, Plaintiff admits that the present case is an Adversary Complaint against the State while arguing that it is not a "suit" against the State. (Resp. Of Plaintiff ¶¶ 2, 6). But by applying the aforementioned factors used in *Mitchell*, it is clear that the present proceeding is indeed a suit against the state. See *In re Janc*, 251 B.R. 525, 542–43 (Bankr. W.D.Mo.2000) (most courts hold that an adversary proceeding to determine dischargeability of tax debt is a suit against state). Thus, the present case as pleaded is barred by state immunity recognized in *Seminole Tribe*.

While suing Illinois as a State in its own name, Plaintiff has not pleaded that he is seeking prospective relief, nor has he

joined any official with allegations that such official is currently attempting to collect the allegedly discharged taxes. Indeed, he has not sought to plead under Rule 7065 Fed.R.Bankr.P. to show entitlement to any injunction. Rather, Plaintiff prays for declaratory judgment against the State that the taxes in question have been discharged. However, *Ex Parte Young* only permits prospective injunctive relief against state officials engaged in violations of federal law. *MCI,* 222 F.3d at 345. Therefore, Plaintiff has failed to meet the threshold pleading requirements under *Ex Parte Young* and his case as presently pleaded cannot be treated under the doctrine of that precedent.

## CONCLUSION

Plaintiff's present suit as pleaded in Count II is inconsistent with Supreme Court precedent and authority holding that Congress cannot use its Article I powers to abrogate state immunity against suit to enforce in a federal court rights obtained under the Bankruptcy Code. The State's motion is therefore allowed to the extent of an order quashing summons served on it and striking Count II without prejudice to Plaintiff's right to file an Amended Complaint if he can and wishes to plead to meet the requirements of *Ex Parte Young.* Count II must be dismissed on the State's motion if he does not or cannot amend as permitted.

A separate order to effect the foregoing is entered this date.