In re William/Norma Jean
**JARRETT, Debtors.**

**Norma Jean Jarrett, Plaintiff,**

v.

**State of Ohio, Dept. of Taxation, Defendant.**

**Nos. 02–3003, 90–31640.**

United States Bankruptcy Court, N.D. Ohio.

July 24, 2002.

Randy L. Reeves, Lima, OH, for Plaintiff.

William H. Webster, Toledo, OH, for Defendant.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Defendant's Motion for Summary Judgment, Memorandum in Support, and Reply; and the Plaintiff's Cross Motion for Summary Judgment, and Response to the Defendant's Motion for Summary Judgment. This Court has now had the opportunity to review the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for

the following reasons, the Court finds that the Defendant's Motion for Summary Judgment should be Granted, and that the Plaintiff's Motion for Summary Judgment should be Denied.

### FACTS

There are no disputed facts in this case. On November 16, 1989, the Defendant, through the filing of a certificate of judgment, obtained a tax lien on all of the real property owned by the Debtor, Norma Jean Jarrett (hereinafter referred to individually as the "Debtor"). The following year, on May 16, 1990, the Debtors filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. During the pendency of the Debtors' bankruptcy case, no assets were administered by the trustee and no proof of claim was filed by the Defendant. Additionally, the facts presented in this case show that no real property was listed by the Debtors in their schedule of assets. On September 18, 1990, the Debtors, in accordance with 11 U.S.C. § 727(a), received their bankruptcy discharge.

Approximately nine years later, on November 9, 1999, the Defendant renewed its tax lien in accordance with Ohio law. As a direct result of this action, the Debtor commenced the instant adversary proceeding contending that the Defendant, by the act of renewing its lien, violated the discharge injunction of 11 U.S.C. § 524. As it pertains to this cause of action, the facts presented in this case show that at no time did the Debtor seeks a determination as to the dischargeability of her tax debts.

### LAW

**11 U.S.C. § 524. Effect of discharge**

(a) A discharge in a case under this title-

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

### DISCUSSION

The Debtor in this case asserts that the Defendant's act of renewing its tax lien violated the discharge injunction of 11 U.S.C. § 524. In response thereto, the Defendant raises what are, in essence, two affirmative defenses: (1) this Court, pursuant to the 11th Amendment to the United States Constitution, has no jurisdiction to hear the Debtor's cause of action; and (2) the act of renewing a lien is strictly an *in rem* action, which, by definition, cannot violate the discharge injunction of § 524. Given that this Court needs a valid jurisdictional basis to hear any matter raised by a party, the Court will begin its analysis with the first issue raised by the Defendant.

The United States Constitution, under Article 1, grants to the federal government the exclusive power to pass bankruptcy laws.[1] *See, e.g., National Railroad Passenger Corp. v. Blanchette*, 551 F.2d 127, 135 (7th Cir.1977). By comparison,

---

1. The Bankruptcy Clause provides, "Congress shall have Power To . . . establish . . . uniform Laws on the subject of Bankruptcies through- out the United States." U.S. Const., Art. I, § 8, cl. 4.

the Eleventh Amendment to the United States Constitution prohibits federal courts from hearing suits against unconsenting states in federal court which are based upon either diversity of citizenship, or those suits which are brought against an unconsenting state by one of its own citizens as well as by citizens of another state.[2] *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Hans v. Louisiana,* 134 U.S. 1, 18–19, 10 S.Ct. 504, 33 L.Ed. 842 (1890). In addition to serving the function of protecting a state's treasury from federal court judgments, the purpose of this Amendment is to avoid the indignity of subjecting states to the coercive process of judicial tribunals at the instance of private parties. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 58, 116 S.Ct. 1114, 1124, 134 L.Ed.2d 252 (1996). Section 106 of the Bankruptcy Code, however, waives this immunity from suit in federal court for, among other things, causes of action brought to determine the dischargeability of a debt (§ 523) and proceedings brought to enforce the discharge injunction of § 524.[3]

In accordance with the argument raised by the Defendant, this Court, in the case of *Pitts v. Ohio Dep't of Taxation (In re Pitts),* 241 B.R. 862 (Bankr.N.D.Ohio 1999), examined whether, in a dischargeability action brought by a debtor against the State of Ohio, Congress' waiver of a state's Eleventh Amendment immunity under § 106 was constitutionally permissible.

After carefully considering the matter, the Court answered the question in the negative, and accordingly dismissed the debtor's complaint to determine dischargeability. In deciding that Congress did not have the constitutional power to waive a state's Eleventh Amendment immunity for purposes of a dischargeability action, this Court relied primarily upon the Supreme Court's decision in *Seminole Tribe of Florida v. Florida,* wherein it was held that those laws created pursuant to Congress' authority under Article 1 of the Constitution (and from which the bankruptcy laws are enacted) cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction by the Eleventh Amendment. 517 U.S. at 72–73, 58, 116 S.Ct. 1114, 1131–32.

In a case subsequent to this Court's decision in *In re Pitts,* however, the Bankruptcy Appellate Panel for the Sixth Circuit found that § 106 of the Bankruptcy Code was a constitutionally permissible waiver of a state's Eleventh Amendment immunity. *Hood v. Tennessee Student Assistance Corp., (In re Hood),* 262 B.R. 412 (6th Cir. BAP 2001). In doing so, the Court in *In re Hood,* after conducting an in-depth analysis of the historical framework of the bankruptcy laws vis-a-vis the United States Constitution, concluded that once the states had ceded their sovereignty over bankruptcy matters to Congress through the Bankruptcy Clause of the Constitution, (U.S. Const. art. I, § 8, cl.4),

**2.** The specific language of the Amendment provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

**3.** This section provides, in relevant part, that, "(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title."

it had also empowered the federal courts to completely enforce those rights created under that system. *In re Hood,* 262 B.R. at 416–18. Furthermore, the Court in *In re Hood* observed that the Supreme Court in *Seminole Tribe* had not specifically addressed the issue of the Eleventh Amendment's applicability to the bankruptcy laws. *Id.* at 423.

■ The *In re Hood* decision, however, which is presently on appeal to the Sixth Circuit Court of Appeals, has been criticized on a couple of different grounds. In particular, it has been asserted that the *In re Hood* decision, in addition to ignoring the plain holding of *Seminole Tribe,* blurs the distinction between Congress' exclusive power to pass bankruptcy laws versus the immunity afforded to the states by the Eleventh Amendment. *See Claxton v. United States (In re Claxton),* 273 B.R. 174, 182–83 (Bankr.N.D.Ill.2002); *Alabama Dep't of Human Resources v. Lewis,* 279 B.R. 308 (S.D.Ala.2002); *In re Serv. Merch. Co., Inc.,* 265 B.R. 917, 920 (M.D.Tenn.2001). For example, it is noted that state courts have concurrent jurisdiction on many issues that involve the application of bankruptcy law. Nevertheless, despite such criticisms and contrary to the Court's previous decision in *In re Pitts,* this Court, based upon the principle of *stare decisis,* will follow the decision rendered in *In re Hood,* unless at some point the holding therein is overturned. Accordingly, in this case, the Court will exercise jurisdiction over the Debtors' Complaint to find the Defendant in violation of the discharge injunction of § 524.[4]

■ The purpose of the discharge of injunction of § 524 is to promote the fresh start policy of the Bankruptcy Code by protecting a debtor against actions brought on prepetition debts. *Hassanally v. Republic Bank (In re Hassanally),* 208 B.R. 46, 49 (9th Cir. BAP 1997); *In re Zarro,* 268 B.R. 715, 720 (Bankr.S.D.N.Y. 2001). However, § 524 is specifically limited in its scope to only those actions by creditors to collect a debt as a "personal liability of the debtor." Thus, § 524 (or for that matter any other Bankruptcy Code section) does not affect the fundamental principle of bankruptcy law that unless otherwise avoidable under the Bankruptcy Code, valid liens—including tax liens—survive a bankruptcy discharge. 11 U.S.C. § 522(c). *See, also, Leslie v. Commissioner (In re Leslie),* 103 B.R. 775, 777 (Bankr.S.D.W.Va.1989)("[a] lien created before bankruptcy survives bankruptcy even though the underlying debt was discharged in bankruptcy, if the lien is not avoided."). As stated by the Supreme Court of the United States, "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor in personam—while leaving intact another—namely, an action against the debtor in rem." *Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). With regards to this rule, the question raised in this case is whether a creditor who seeks to renew or otherwise extend their lien after the debtor has received a bankruptcy discharge, has acted solely *in rem,* or has instead violated the discharge injunction of § 524 by acting against the debtor in personal capacity; that is, does the renewal of a lien constitute an action taken against a debtor *in personam.* As the following will

4. It should be noted that although the *In re Hood* decision involved a dischargeability action, this Court can discern no substantive difference between § 106's abrogation of a state's sovereign immunity under § 523 (the dischargeability of a debt) and the situation here where the Debtor asserts that § 106 has abrogated a state's sovereign immunity for purposes of the discharge injunction of § 524.

explain, the answer to this question depends on what property is being affected by the act of renewing the lien.

For purposes of the bankruptcy process, the act of renewing a prepetition lien will affect one of two types of property: either prepetition property or postpetition property. In the case of prepetition property—i.e., property which the creditor obtained a lien on prior to the time the debtor filed for bankruptcy—it is well established that the act of renewing a lien does not conflict with the discharge injunction of § 524. *Morton v. National Bank of New York City (In re Morton)*, 866 F.2d 561 (2nd Cir.1989) (extension of a valid lien is not in conflict with the Bankruptcy Code); *Larson v. Norwest Bank of Fargo, N.A. (In re Larson)*, 979 F.2d 625, 627 (8th Cir.1992) (filing of addendum to preserve a lien is in harmony with Bankruptcy Code); *Dinatale v. U.S. (In re Dinatale)*, 235 B.R. 569, 573–74 (Bankr.D.Md.1999) (IRS renewal of lien did not violate discharge injunction); *McCorkle v. State of Georgia, Dep't of Revenue (Matter of McCorkle)*, 209 B.R. 773, (Bankr.M.D.Ga.1997) (renewal of tax lien on debtor's prepetition property does not violate the discharge injunction of 11 U.S.C. § 524). The basis for this is clear: Such a creditor is not, in contravention to the discharge injunction of § 524, attempting to enforce its claim as a "personal liability" against the debtor, but is instead merely seeking to preserve its *in rem* interest. *Id.* at 776–77.

On the other hand, when a creditor seeks to renew a prepetition lien so as to bring within the lien's scope property acquired by a debtor postpetition (a.k.a. after acquired property), courts uniformly find that a violation of the discharge injunction of § 524 has occurred. *See In re Paeplow,* 972 F.2d 730, 735 (7th Cir.1992) (holding that although a discharge will generally not affect a prepetition lien, creditors may not create postpetition liens based upon discharged debts nor may they institute postdischarge in rem collection actions against after-acquired property if they hold no surviving lien after the discharge); *Ogburn v. Southtrust Bank (In re Ogburn)*, 212 B.R. 984, 987 fn. 10 (Bankr. M.D.Ala.1995) (holding that "upon discharge of the *in personam* liability, there is no basis for the lien to attach to property acquired postpetition."); *In re Thomas*, 102 B.R. 199, 200–01 (Bankr.E.D.Cal.1989) (after acquired property is not subject to creditor's judgment lien); *In re Norvell*, 198 B.R. 697, 699 (Bankr.W.D.Ky.1996) (a prepetition judgment lien is void where the obligation underlying the lien was discharged and the debtor owned no real estate at time bankruptcy was filed to which judgment creditor's lien could attach).

This position is based largely upon the legal maxim, recognized under Ohio law,[5] that a lien cannot be created in the absence of an underlying obligation. *In re Thomas*, 102 B.R. at 201. Thus, as long as a debtor receives a discharge on an underlying obligation, such a creditor cannot obtain a lien on any property acquired by a debtor postpetiton as no debt exists from which the lien can arise. As was more fully explained in *Ogburn v. Southtrust Bank (In re Ogburn)*:

> The effect of release from the judgment is to extinguish the judgment .... Since a judgment lien cannot exist independently of the judgment, such lien is discharged by the satisfaction and extinguishment of the judgment.

Co. v. Warren Home Development Co., 109 Ohio St. 358, 365, 142 N.E. 883, 885 (1924). *See also* Ohio Jur 3rd liens § 1.

---

**5.** It has been held that, for purposes of Ohio law, that a lien cannot exist without an underlying obligation—i.e., a debt. *Mahoning Park*

A treatise on bankruptcy explains that 'the discharge may permanently suppress floating liens for dischargeable debts' as follows:

> The discharge enjoins any 'action, the employment of process, or an act, to collect, recover or offset' a discharged debt 'as a personal liability of the debtor ...' The same reasoning argues for interpreting the language 'act, to collect, recover' [contained in § 524] to cover and enjoin a prepetition lien that would float to the debtor's postpetition property.

> It is possible that the spread of a prepetition judgment lien is also stopped by the language of [§ 524](a)(1) that 'voids any judgment.' The judgment is a debt which the lien of judgment secures. Without the debt there is nothing to secure and no basis for the lien. The lien is most probably preserved to the extent of property to which it has already attached. To any further extent, however, the judgment lien is seemingly undermined, quite literally, by voiding the judgment debt.

212 B.R. at 986 (internal citation omitted).

 Therefore, based upon the foregoing principles, the rules relating to the renewal of a creditor's lien may be restated as this: First, to the extent that a creditor is merely attempting to renew its lien against prepetition property of a debtor, no violation of the discharge injunction has occurred. Conversely, a violation of the discharge injunction will be found to exist if a creditor, by renewing its prepetition lien, is attempting to gain a lien on any postpetition property acquired by a debtor, subject, however, to this one specific limitation: the underlying debt held by the creditor must have been discharged in the debtor's bankruptcy.

 In applying the above-stated rules to the particular facts of this case, there does not appear to be any disagreement between the Parties that the Debtor did not, prior to the filing of her bankruptcy petition, have any real property to which the Defendant's lien could attach. As a result, it would appear that by renewing its lien, the Defendant was attempting to gain a lien on any postpetition property acquired by the Debtor. Notwithstanding, the Court could not discern from the record anything which would indicate that a determination had been made regarding the dischargeability of the Debtor's tax obligations. Thus, as it is the Debtor's burden, for purposes of bankruptcy law, to initiate a dischargeability action with respect to a tax obligation,[6] the Court declines to find that the Defendant violated the discharge injunction until such a determination has been made. Therefore, for this reason, the Court will dismiss the Debtor's complaint as was requested in the Defendant's Motion for Summary Judgment. However, this dismissal will be without prejudice so as to enable the Debtor to bring this same action if, at a later time, a determination is made that the Debtor's tax obligation to the Defendant is a dischargeable debt.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment filed by the Defendant, the State of Ohio, Department of Taxation, be, and is hereby, GRANTED; and that the Motion for Summary Judgment filed

---

6. *See* 11 U.S.C. § 523(c); Fed.R.Bankr.P. 4007(c).

by the Plaintiff, Norma Jean Jarrett, be, and is hereby, DENIED.

It is *FURTHER ORDERED* that the Complaint of the Debtor, Norma Jean Jarrett, be, and is hereby, DISMISSED without prejudice.