FLAUM, Circuit Judge.
 

 After William Paeplow received a discharge in bankruptcy under Chapter 7 of the Bankruptcy Code, a group of creditors filed a suit in state court seeking to collect on a pre-petition debt he owed them. To circumvent the prohibition discharge ordinarily places on such suits, the creditors attempted to proceed
 
 in rem
 
 against property Paeplow and his wife owned as tenants by the entirety. Paeplow sought an injunction to halt that suit; the bankruptcy court granted the injunction, the district court affirmed, 128 B.R. 429, and we affirm in turn.
 

 I.
 

 The facts in this case are not in dispute. In 1981, William and Janice Paeplow moved from South Bend, Indiana, to Roswell, New Mexico, where they purchased a tire business from Edmond Foley, Kent Rowe, Jerry Huelat, Y.L. Beagles, Betty Beagles, Pete Cassen, and Karen Cassen (the creditors). The Paeplows subsequently took out a $60,000 loan from the First Interstate Bank of Roswell (the Bank), and
 
 jointly
 
 executed a promissory note which, among other things, secured the loan with inventory, fixtures, and accounts receivables (the security) they held in the tire business. The creditors, who still held an interest in the property securing that note, simultaneously executed an agreement subordinating their rights in that property to the Bank.
 

 The Paeplows later defaulted on the promissory note on September 3, 1982, and on that day William Paeplow
 
 individually
 
 filed for bankruptcy. Paeplow’s bankruptcy schedules listed the $60,000 promissory note as one of his liabilities, and a house he owned in South Bend, Indiana (the South Bend property) as one of his assets. Pae-plow also claimed the South Bend property — which he and his wife held as tenants by the entirety — as property eligible for exemption from his creditors’ claims under Indiana state law. Ind.Code § 34-2-28-1(a). Paeplow received a discharge in bankruptcy in January 1984, prior to which the Bank filed a motion with the bankruptcy court requesting relief from the automatic stay. The bankruptcy court granted that motion, giving the Bank the go-ahead to pursue a joint judgment against the Pae-plows in state court and to enforce that judgment against the South Bend property. However, as will later become critical, the Bank failed to take the second necessary step to preserve its claim on the Paeplow’s real estate: moving for a stay of the Pae-plow’s discharge — which he received without objection in January 1984 — to give it time to obtain a judgment lien.
 

 At any rate, the creditors, who still held an interest in the property securing the note, decided to take action to protect their interest. They assumed the Paeplows’ liability on the note, stepping into the shoes of the Bank as its assignee, and then filed their own motion for relief from the automatic stay, so that they could seek a joint judgment and lien against the Paeplows in state court (as the Bank had intended to do). The bankruptcy court responded with an order informing the creditors that the automatic stay had been lifted as to all of Paeplow’s creditors on the day of his discharge. The creditors apparently interpreted that order as a green light to pursue Paeplow’s pre-petition obligation on the note. Accordingly, they filed suit in state court against Janice Paeplow for collection on the note and later amended their complaint to add her husband William as a defendant.
 

 That suit, which the creditors characterized as an
 
 in rem
 
 action, languished for several years until trial was finally scheduled for September 26, 1990. In the interim, Paeplow never raised the defense of discharge in any pleading or pre-trial proceeding. Paeplow finally launched a collateral attack on that action by filing this suit in federal bankruptcy court on July 25, 1990, seeking to enjoin the creditors under
 
 *733
 
 11 U.S.C. § 524 from taking any further steps to collect on the note.
 

 Following briefing and a hearing, the bankruptcy court granted Paeplow’s request for an injunction,
 
 In re Paeplow,
 
 119 B.R. 610 (Bankr.N.D.Ind.1990), concluding that the creditors’ state court action was untimely. The promissory note and South Bend property were listed on Paeplow’s bankruptcy schedules and were discharged before the creditors took action to reduce their claim to a judgment lien. Hence, Paeplow’s liability on the note had been discharged, and his interest in the South Bend entirety property exempted, preventing the Bank or its assignees from taking action to collect on the note or to proceed
 
 in rem
 
 against the property. 11 U.S.C. § 524(a)(2). The district court affirmed.
 
 In re Matter of Paeplow,
 
 128 B.R. 429 (N.D.Ind.1991). We review findings of fact in bankruptcy cases under the clearly erroneous standard, Bankruptcy Rule 8013,
 
 In re Weber,
 
 892 F.2d 534, 538 (7th Cir.1989), and conclusions of law
 
 de novo. In re Newman,
 
 903 F.2d 1150, 1152 (7th Cir.1990). The district court found this case limited to issues of law. We agree, and with the
 
 de novo
 
 standard in mind, turn to each of the creditors’ contentions on appeal.
 

 II.
 

 Several sections of the Bankruptcy Code are relevant to this case. 11 U.S.C. § 541(a)(1) provides that “all legal or equitable interests of the debtor in property as of the commencement of the case” are pulled into the bankruptcy estate for the benefit of all creditors. 11 U.S.C. § 522(b) provides that, notwithstanding § 541, an individual debtor may exempt from the bankruptcy estate certain enumerated items. Alternately, a state may opt out of the federal exemption scheme in § 522 and provide its own list of exempted items. The bankruptcy trustee then has the power to sell or use all non-exempt § 541 property for the benefit of all creditors. § 366(b)(1). Significantly, the trustee may reach property the debtor holds as a tenant by the entirety, subject to either the federal or state exemption scheme, whichever is in effect. § 363(h). After distribution of the estate’s assets, a debtor emerges from bankruptcy under the fresh start policy with a discharge of his or her debts; § 524 provides that discharge enjoins any former creditors from commencing any action to collect a “personal liability” of the debtor.
 

 State property law is also relevant to this case. Indiana continues to recognize tenancy by the entirety, a common law form of marital ownership that creates between spouses joint ownership of an undivided interest in property which may not be transferred or encumbered by either spouse acting alone.
 
 See, e.g., State of Indiana v. Union Bank & Trust Co.,
 
 177 Ind.App. 632, 380 N.E.2d 1279, 1280 (1978). Creditors operating under this regime cannot execute on entirety property without first obtaining a judgment against both spouses.
 
 See, e.g., Enloe v. Franklin Bank & Trust Co.,
 
 445 N.E.2d 1005 (Ind.Ct.App.1983).
 

 One further observation about Indiana state law is warranted. As noted, § 522 permits states to opt out of the federal exemption scheme, and the Indiana legislature chose to do so in 1980. Ind.Code § 34-2-28-0.5. The legislature simultaneously amended the state’s existing exemption scheme to exempt
 

 [a]ny interest the judgment debtor has in real estate held as a tenant by the entireties
 
 on the date of the filing of the petition for relief under the bankruptcy code, unless a joint petition for relief is filed by the judgment debtor and spouse, or individual petitions of the judgment debtor and spouse are subsequently consolidated.
 

 Ind.Code § 34-2-28-l(a)(5) (emphasis added). As will become important later, the plain language of the statute, which applies only to bankruptcies, appears to grant an individual debtor who holds an interest in entirety property a complete exemption from the claims of all creditors, including those made by joint creditors of both spouses.
 

 
 *734
 
 III.
 

 The creditors argue that the district court erred in three respects: (1) in not allowing the creditors to follow the old Indiana practice of permitting post-discharge
 
 in rem
 
 proceedings against a debt- or’s entirety property; (2) in concluding that the South Bend property entered Pae-plow’s bankruptcy estate under 11 U.S.C. § 541; and (3) in concluding that Paeplow received an exemption on his South Bend property under Ind.Code § 34-2-28-1. Another panel of this Court recently confronted these same issues,
 
 In re Matter of Hunter,
 
 970 F.2d 299 (7th Cir.1992), and our analysis here closely tracks the sound reasoning of that decision.
 

 A.
 

 The creditors first argue that the district court improperly refused to follow the old Indiana practice of permitting post-discharge
 
 in rem
 
 actions against the entirety property of a discharged debtor. Such actions were permitted by Indiana courts as long as the creditor held a joint claim against both spouses, rather than a claim against the filing debtor alone.
 
 See Smith v. Beneficial Fin. Co.,
 
 139 Ind.App. 653, 218 N.E.2d 921, 923 (1966);
 
 First Nat’l Bank v. Pothuisje,
 
 217 Ind. 1, 25 N.E.2d 436, 438-40 (1940);
 
 Echelbarger v. First Nat’l Bank,
 
 211 Ind. 199, 5 N.E.2d 966, 968 (1937).
 

 Those decisions emerged largely in response to a feature of the Bankruptcy Act of 1898 (the Act) — since superseded by the Bankruptcy Code of 1978 — which presented an opportunity for debtors to perpetrate legal fraud on unsuspecting joint creditors. The Act provided that property which the debtor was capable of “transferpng] or which might have been levied upon” would become “property of the estate.” 11 U.S.C. § 110(a)(5) (1970) (repealed 1979). This provision, by definition, did not include the debtor’s entirety property (unless the debtor had jointly filed bankruptcy with his or her spouse). The Act, by precluding the trustee from reaching the debtor’s entirety property, allowed spouses to fraudulently shield such property from joint creditors simply by having one spouse individually file for bankruptcy.
 
 See, e.g., In re Hunter,
 
 970 F.2d at 302;
 
 Reid v. Richardson,
 
 304 F.2d 351, 355 (4th Cir.1962). To avoid this inequitable result, state courts in Indiana and elsewhere developed a mechanism to combat potential fraud — namely, permitting joint creditors to proceed
 
 in rem
 
 against a discharged debtor’s entirety property.
 
 Beneficial Fin.,
 
 218 N.E.2d at 923;
 
 Pothuisje,
 
 25 N.E.2d at 438-40;
 
 Echelbarger, 5
 
 N.E.2d at 968.
 
 [1]
 

 The creditors argue that the rationale underlying that approach remains viable today. The district court disagreed, relying on more recent decisions, both under the Code,
 
 Munoz v. Dembs (In re Dembs),
 
 757 F.2d 777, 781 (6th Cir.1985), and the Act,
 
 In re Gilbert,
 
 No. FB76-513 (N.D.Ind. June 9, 1978) (unpublished) (reprinted as Appendix B to
 
 In re Paeplow,
 
 119 B.R. at 621);
 
 Harris v. Manufacturers Nat’l Bank,
 
 457 F.2d 631, 635-36 (6th Cir.),
 
 cert. denied,
 
 409 U.S. 885, 93 S.Ct. 118, 34 L.Ed.2d 142 (1972), holding that post-discharge
 
 in rem
 
 and
 
 quasi in rem
 
 actions against entirety property are permitted only if the joint creditor has first obtained a judicial lien against that property
 
 prior
 
 to discharge. Because neither the Bank nor the creditors did so in this case, the district court granted Paeplow’s requested injunction.
 

 The creditors maintain that the cases on which the district court principally relied—
 
 Harris
 
 and
 
 Gilbert
 
 — are pre-Code cases of questionable validity in light of language in the Code which reinforces the old Indiana practice. Whereas the Act discharged all “provable debts” of the debtor, 11 U.S.C. § 35 (1970) (repealed 1979), the Code discharges only the
 
 “personal liabilities]
 
 of the debtor.” 11 U.S.C. § 524 (1988) (em
 
 *735
 
 phasis added). Seizing on this language, the creditors argue that by limiting discharge to the debtor’s
 
 personal
 
 liabilities, Congress intended to permit post-discharge
 
 in rem
 
 actions against a debtor’s entirety property.
 

 The creditors further point to an amendment to § 524 which they claim buttresses their position. Although that provision formerly included language prohibiting creditors from commencing actions against “the property of the debtor,” 11 U.S.C. § 524(a)(2) (1979), Congress chose to eliminate those words in 1984. This revision, according to the creditors, effectuated Congress’ intent to preclude through discharge only
 
 in personam
 
 proceedings against the debtor and not
 
 in rem
 
 suits against the property of the debtor. It follows, the creditors maintain, that the traditional Indiana practice of permitting post-discharge
 
 in rem
 
 actions to attach entirety property is consistent with the Code.
 
 See In re Snow,
 
 38 B.R. 19 (Bankr.M.D.Fla.1983) (holding that § 524(a)(2) only discharges “personal” liabilities of debtor and permits creditor to pursue judgment lien against entirety property post-discharge).
 

 We conclude that the district court properly declined to follow the customary practice in Indiana of permitting post-discharge
 
 in rem
 
 actions. Congress did indeed intend to permit such actions, but
 
 only
 
 to the extent a creditor first obtained a judgment lien against a debtor’s property prior to discharge.
 
 In re Hunter,
 
 970 F.2d at 310. The Indiana practice, as noted, evolved in response to the inability of bankruptcy trustees to obtain jurisdiction over entirety property for the benefit of joint creditors.
 
 See, e.g., Pothuisje,
 
 25 N.E.2d at 440 (en-tireties property “foreign” to the jurisdiction of bankruptcy courts). Now the Code permits the trustee to sell entirety property to satisfy the claims of joint creditors, in proper circumstances, and the rationale underlying the pre-Code Indiana decisions is therefore no longer viable.
 
 In re Hunter,
 
 at 309-10.
 

 Moreover, contrary to the creditors’ assertion, the legislative history behind § 524, and its amendment in 1984, weakens, rather than reinforces, the justification for the old Indiana practice. In dropping the “property of the debtor” language from § 524, Congress did not implicitly open the door to post-discharge
 
 in rem
 
 action against all discharged debtors; rather, it attempted
 

 to clarify that discharge precludes only
 
 actions to establish personal liability,
 
 not actions to enforce a lien against property of the debtor. Cases and commentators agree that the Congress intended to resolve the apparent inconsistency between section 524(a)(2) and other portions of the Code, such as section 506(d)— which allows certain liens to pass through bankruptcy unaffected — and section 522(c)(2) — which states that exempt property is still subject to certain liens.
 

 In re Hunter,
 
 970 F.2d at 310 (emphasis in original). The 1984 amendment, then, was designed to make a clarification: while creditors are enjoined from seeking to collect on the pre-petition liabilities of a discharged debtor, creditors are not prohibited from executing a judgment lien against a discharged debtor’s property, as long as the judgment was obtained
 
 before discharge. Id.; In re Stephenson,
 
 96 B.R. 388, 389 n. 1 (Bankr.S.D.Fla.1988); 3
 
 Collier on Bankruptcy
 
 ¶¶ 506.07, 524.01 (15th ed. 1992). Here, neither the creditors nor the Bank ever reduced their claim on the promissory note to a joint judgment against the Paeplows or obtained a lien on their entirety property. The creditors characterize their attempt to establish such a judgment lien as one
 
 in rem
 
 and not against Paeplow personally. However, that characterization is incorrect — reducing their claim to a judgment requires establishing Paeplow’s personal liability on the promissory note, something clearly barred by § 524.
 
 In re Hunter,
 
 970 F.2d at 310-11.
 

 B.
 

 The creditors argue alternatively that (1) entirety property under Indiana law does not enter the bankruptcy estate under 11 U.S.C. § 541(a)(1), and (2) Indiana law does
 
 *736
 
 not permit a debtor to exempt from joint creditors property held as tenants by the entirety. If either proposition is valid, the South Bend property was never discharged under § 524 and is presumably amenable to the creditors’ state court
 
 in rem
 
 action.
 

 The creditors first maintain that, notwithstanding provisions in the Code permitting a trustee in bankruptcy to administer entirety property,
 
 i.e.,
 
 § 363(h), Indiana’s definition of entirety property does not permit that property to enter the bankruptcy estate. The creditors acknowledge that the language of § 541(a)(1) — which broadly defines the bankruptcy estate to include “all legal or equitable interests of the debtor in property as of the commencement of the case” — has almost uniformly been interpreted to permit courts to pull a debtor’s entirety property into the bankruptcy estate.
 
 See, e.g., Sumy v. Schlossberg,
 
 777 F.2d 921, 925 (4th Cir.1985);
 
 Liberty State Bank & Trust v. Grosslight (In re Gross-light),
 
 757 F.2d 773, 775 (6th Cir.1985);
 
 Napotnik v. Equibank & Parkvale Sav. Ass’n,
 
 679 F.2d 316, 318 (3d Cir.1982). Despite that broad language, the creditors argue that entirety property cannot enter the bankruptcy estate under Indiana law because neither spouse has a divisible “interest” in entirety property within the meaning of § 541. The creditors have some support for this contention.
 
 In re Jeffers,
 
 3 B.R. 49, 56 (Bankr.N.D.Ind.1980) (“real estate held as tenants by the entirety in Indiana does not become property of the estate pursuant to Section 541 of the Code”). Hence, the creditors argue, their post-discharge effort to reach Paeplow’s South Bend property is permissible since that property never entered the bankruptcy estate.
 

 The creditors also assert that even if entirety property does enter the bankruptcy estate, Indiana law does not provide an exemption for such property in this case. According to the creditors, in enacting Ind. Code § 34-2-28-1, the Indiana legislature did not intend to exempt entireties property from the claims of
 
 joint
 
 creditors, but simply to continue the common law practice of immunizing entirety property from execution by
 
 individual
 
 creditors.
 
 See In re Marino,
 
 27 B.R. 282 (Bankr.N.D.Ind.1983) (characterizing the Indiana provision as an attempt to codify a common law grant of immunity rather than an attempt to create an exemption);
 
 see also
 
 Bruce Townsend,
 
 Creditors Rights: Survey of Recent Law,
 
 14 Ind.L.Rev. 500, 509-10 (1981); Note,
 
 The Bankruptcy Code of 1978 and Its Effect Upon Tenancies by the Entireties,
 
 13 Ind. L.Rev. 761, 789-91 (1980).
 

 The creditors base this argument on 11 U.S.C. § 522(b)(2)(B), which incorporates into the Code any “exempt[ions] from process” entirety property receives under a state’s nonbankruptcy law. Because Indiana has never afforded holders of entirety property protection from the claims of
 
 joint
 
 creditors under its
 
 nonbankruptcy
 
 law,
 
 Sharpe v. Baker,
 
 51 Ind.App. 547, 99 N.E. 44 (1911), the creditors assert that the Indiana legislature did not intend to upset that tradition in adopting § 34-2-28-l(a)(5), which applies only in the
 
 bankruptcy
 
 context. Any other interpretation is illogical, the creditors contend, because it would recreate the same opportunities for legal fraud that previously existed under the Act. Thus, properly interpreted, Paeplow’s entirety property never received an exemption under Indiana law and is amenable to the claims of joint creditors.
 

 We disagree and conclude that the South Bend property both entered Pae-plow’s bankruptcy estate and received an exemption under Indiana law. First, the holding in
 
 Jeffers
 
 is of questionable validity in light of modifications to Indiana exemption law adopted subsequent to that decision.
 
 Jeffers
 
 held that entirety property in Indiana did not become part of the bankruptcy estate under § 541 because Indiana law did not permit either spouse to claim an
 
 individual
 
 interest in entirety property.
 
 Id.
 
 at 53. However, shortly after
 
 Jeffers,
 
 the Indiana legislature amended § 34-2-28-l(a)(l) to grant each spouse such an individual interest in entirety property, Act of Mar. 3, 1980, Pub.L. 196 § 2, 1980 Ind. Acts 1625, thereby undermining
 
 Jeffers.
 
 Under current Indiana law, a debtor in bankruptcy has a sufficient individual in
 
 *737
 
 terest in entirety property to bring that property into the bankruptcy estate.
 

 At any rate, the legislative history behind § 541 makes clear that Congress intended a debtor’s interest in entirety property, at least initially, to enter the bankruptcy estate.
 
 Hunter,
 
 970 F.2d at 305-06;
 
 Schlossberg, 111
 
 F.2d at 925;
 
 Napotnik,
 
 679 F.2d at 318. The House Report to § 541 notes, for example, that
 

 the undivided interest of a spouse who is a debtor in a case under the Act is property of the estate. This is contrary to the present Act which looks to state law to determine what happens with respect to property jointly owned by husband and wife.
 

 H.R.Doe. No. 137, 93d Cong., 1st Sess. 195 (1973). That is not to say Congress intended to circumvent the protection afforded entirety property under state law. It simply means congress intended entirety property to enter the bankruptcy estate and to pass out of the estate if subject to an exemption, and if claimed by the debtor on his or her bankruptcy schedules.
 
 In re Hunter,
 
 122 B.R. at 355.
 

 We also reject the creditors’ suggestion that the Indiana legislature intended § 34-2-28-l(a)(5) to merely codify the Indiana common law practice of immunizing entirety property from execution by individual creditors (but not joint creditors). The problems with this argument are fully detailed in
 
 In re Hunter,
 
 970 F.2d at 306-08. Most significantly, this interpretation violates the plain meaning of the Indiana statute, which reflects an intent to create a blanket exemption for entirety property in the bankruptcy context. Thus, we conclude that the Indiana legislature intended § 34-2-28-l(a)(5) to shield the entirety property of a debtor in bankruptcy from the claims of creditors — including joint creditors — to the greatest degree possible. Under § 34-2-28-l(a)(5), Indiana has in effect exempted entirety property — if listed by a debtor — from administration by a trustee in bankruptcy.
 
 [2]
 

 Id.
 

 We acknowledge that this interpretation may create the same potential for legal fraud available to unscrupulous debtors under the Act.
 
 In re Hunter,
 
 970 F.2d at 309-10. However, that result stems from Indiana’s decision to grant its residents such sweeping protection of entirety property from the claims of creditors in bankruptcy. Given the strong fresh start policy embodied in the Code, we are hesitant to subvert that policy by crafting judicial exceptions to discharge.
 
 See In re Chateaugay Corp.,
 
 112 B.R. 513, 524 (S.D.N.Y.1990);
 
 see also In re Mills,
 
 111 B.R. 186, 194 (Bankr.N.D.Ind.1988).
 

 IV.
 

 The creditors’ other arguments merit only limited discussion. First, they contend that, despite their failure to obtain a judicial lien on the South Bend property, an equitable lien arose nonetheless by actions the Bank took prior to discharge. They claim that when the Bank sought the bankruptcy court’s permission to obtain a judicial lien, Paeplow was put on notice that the Bank intended to levy against his entirety property. And, in fact, the bankruptcy court granted that request in an order dated January 16,1984. Consequently, the creditors argue, an equitable lien arose on that date because Paeplow had notice of the Bank’s plan to obtain a judgment lien. The creditors offer no legal authority directly supporting this proposition and we decline to accept it, particularly in light of our duty to narrowly construe exceptions to discharge in bankruptcy.
 

 The creditors also assert that the January 16, 1984 order, by granting permission to proceed in state court, bars Pae-plow from seeking an injunction under principles of
 
 res judicata.
 
 We disagree. The bankruptcy court’s order was not a final judgment on the merits, but simply a determination that the Bank, as a joint
 
 *738
 
 creditor of the Paeplows, was
 
 eligible
 
 to seek a lien against their entirety property. Neither the Bank nor the creditors ever pursued such a lien, nor did either seek a stay of Paeplow’s discharge.
 

 Finally, the creditors argue that we should abstain from enjoining the state court proceeding under principles of comity. Specifically, they contend that Paeplow has waived his right to invoke the ancillary jurisdiction of this Court by failing to timely plead discharge as a defense in the state court proceedings. Paeplow’s failure to do so was an imprudent litigation decision, but we agree with the district court that Pae-plow did not waive the protection afforded him as a discharged debtor under § 524 by his inaction in state court. No trial has been held in Indiana state court, nor has a judgment been entered against him there, and we decline to withdraw our ancillary jurisdiction in this matter on grounds of comity.
 

 V.
 

 In sum, § 541 defines what property of a debtor enters the bankruptcy estate, § 522 permits the debtor to exempt certain property from the reach of creditors, and § 524 provides an absolute discharge of the debtor’s pre-petition debts. This comprehensive statutory framework severely limits the ability of creditors to reach discharged debts and property. Here, Paeplow listed his indebtedness on the promissory note and his right to an exemption on the South Bend property on his bankruptcy schedules. He received a discharge before the Bank or its assignees reduced that claim to a judgment lien, and the district court properly held that the creditors were enjoined from the date of discharge from taking any further action to collect from Paeplow on the note
 
 [3]
 
 or to obtain a lien on the South Bend property.
 

 The creditors’ arguments in this case were not frivolous and the district court properly denied Paeplow’s request for sanctions under Rule 11. The decision of the district court is Affirmed.
 

 [1]
 

 . Bankruptcy courts developed a mechanism of their own to avoid fraud: a joint creditor could seek a stay of the debtor's discharge, allowing it time to reduce its claim to a judgment lien against the spouses' entirety property.
 
 See In re Hunter,
 
 122 B.R. 349, 353-54 (Bankr.N.D.Ind.1990) (citing
 
 Lockwood v. Exchange Bank of Fort Valley,
 
 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903)),
 
 aff’d,
 
 970 F.2d 299 (7th Cir.1992).
 

 [2]
 

 . In so holding, we do not pass on whether Indiana’s statute, by its express limitation to the bankruptcy context, violates the mandate of U.S. Const, art. I, § 8 which requires geographic uniformity in bankruptcy law.
 
 See In re Hunter,
 
 970 F.2d at 306 & n. 10. The creditors made no such argument here.
 

 [3]
 

 . We note that Janice Paeplow, as a non-filing debtor, has no such protection.