Elizabeth E. Brown, Bankruptcy Judge
THIS MATTER comes before the Court on the Motion for Partial Summary Judgment *541 ("Motion"), filed by Defendant First Land Development, LLC ("FLD"), and the response filed by Plaintiff Brooks L. Kellogg ("Debtor"). Central to this dispute is whether a lien creditor has the ability to create a new judgment lien once the underlying debt has been discharged in bankruptcy and the creditor's prepetition lien has expired under state law post-discharge. The Court being otherwise advised in the premises hereby FINDS and CONCLUDES:
I. BACKGROUND
Many of the basic facts of this proceeding, at least as they relate to Defendant FLD, are not in dispute.[1] Several years prior to his bankruptcy filing, FLD obtained two judgments against the Debtor on June 30, 2010 and August 16, 2010. Shortly thereafter, FLD recorded both judgments with the Routt County Clerk and Recorder, which is the county in which the Debtor's home is located. These recordings created judgment liens on the Debtor's home pursuant to Colo. Rev. Stat. § 13-52-102. Under that statute, a judgment lien does not last indefinitely. Rather, the statute provides that:
The lien of such judgment shall expire six years after the entry of judgment unless, prior to the expiration of such six-year period, such judgment is revived as provided by law and a transcript of the judgment record of such revived judgment, certified by the clerk of the court in which such revived judgment was entered, is recorded in the same county in which the transcript of the original judgment was recorded, in which event the lien shall continue for six years from the entry of the revived judgment.
Colo. Rev. Stat. § 13-52-102(1). Applying this provision and absent revival, FLD's judgment liens on Debtor's house were set to expire on June 30, 2016 and August 16, 2016, respectively.
Before expiration occurred, the Debtor filed a chapter 7 petition on April 25, 2016. The Debtor listed FLD's claim and judgment liens in his schedules. FLD received notice of the bankruptcy case. Neither the Debtor nor the chapter 7 trustee took any action to avoid FLD's liens[2] and FLD did not object to the entry of discharge in the Debtor's case. On September 19, 2016, the Debtor received his discharge and on November 2, 2016, the Debtor's bankruptcy case closed.
While the Debtor's bankruptcy case was pending, the deadline for FLD to extend its prepetition judgment liens was tolled by 11 U.S.C. § 108(c).[3] Under that subsection, the deadline was extended to the later of (1) the end of the statutory period provided for in Colo. Rev. Stat. § 13-52-102, or (2) thirty days after termination or expiration of the automatic stay with respect to such claim. The later date in this case is the expiration of the automatic stay. The automatic stay terminated as to the Debtor's home when that property was no longer property of the bankruptcy estate. 11 U.S.C. § 362(c)(1). The date on which the home lost its status as property of the estate is tied to the closing of this case. According to § 554(c), property that a debtor schedules, but which a trustee *542 does not administer is deemed abandoned to the debtor upon the closing of the case. Because the Debtor listed the home as an asset, but trustee did not administer it prior to case closing, the home ceased to be property of the estate on November 2, 2016. This means FLD had thirty days from case closing under § 108(c), or until December 2, 2016, to revive and record its judgments, and thereby extend its prepetition judgment liens for another six years. Thus, despite the discharge of the underlying indebtedness, FLD could have acted to revive the judgment, solely as a means of preserving its lien rights, but it had to do so by December 2, 2016. FLD did not act within this timeframe. Instead, almost three months later, on March 7, 2017, FLD obtained verified transcripts of its judgments and recorded them with the Routt County Clerk and Recorder.
FLD admits that this filing was procedurally deficient because it failed to file a motion to revive the judgments as required by Colo. R. Civ. P. 54(h). FLD further concedes that, because of this deficiency, a judgment lien was not created on that date. Nevertheless, in late 2018 when the Debtor was attempting to sell his home and asked FLD to remove the improper filing, FLD instead demanded payment of its judgment debts.
FLD argues that its failed attempt to create a new judgment lien and its subsequent demand for repayment did not violate the discharge injunction. FLD contends that, while entry of discharge eliminated the Debtor's personal or "in personam" liability for its judgments, it did not eliminate FLD's ability to proceed on an "in rem" basis. Because liens "ride through" bankruptcy, FLD argues it can seek to revive its judgment and create a new judgment lien in an in rem action without violating the discharge injunction. The Debtor disagrees, arguing that when FLD's prepetition judgment liens expired, any attempt to impose a new lien post-discharge or to otherwise collect on the judgments was a violation of § 524(a).
II. PROCEDURAL HISTORY
This dispute first came to the Court's attention when the Debtor filed a motion to reopen his bankruptcy case on October 31, 2018, more than two years after entry of discharge. After the Court granted that relief, FLD and another judgment creditor, AMT, LLC ("AMT"), filed a joint motion for relief from stay, seeking either relief to file motions to revive their respective judgments in state court, or an order declaring that the automatic stay does not prevent revival. The Debtor objected to that motion and, shortly thereafter, filed a Motion to Avoid Judicial Liens, seeking to avoid the judgment liens held by FLD, AMT, and two other judgment creditors pursuant to § 522(f). The Court held a hearing on both motions on January 29, 2019, at which the parties agreed to resolve the issues between them in an adversary proceeding. The Court set deadlines for the Debtor to file a complaint against FLD and AMT, as well as a deadline for those Defendants to file a summary judgment motion.
The Debtor then initiated this adversary proceeding. Debtor's complaint in this adversary alleges three claims for relief: (1) violation of the discharge injunction against FLD only; (2) declaratory judgment determining the extent and priority of liens against both FLD and AMT; and (3) a spurious lien claim against FLD only. FLD then filed its Motion for Partial Summary Judgment on the first claim for relief, violation of the discharge injunction. Because that claim does not involve AMT and the facts concerning AMT's lien have not been fully developed, this Order does not address AMT's lien. Instead, this Order addresses only FLD's liability for violation of the discharge injunction. However, *543 to determine that claim, this Court must also rule on the Debtor's second claim for declaratory judgment as to the extent of FLD's liens. Thus, even though FLD did not seek summary judgment on the second claim, this Court's ruling includes both of the first two claims, but only as to Defendant FLD.
III. APPLICABLE STANDARD
Federal Rule of Civil Procedure 56(c), made applicable to this proceeding by Fed. R. Bankr. P. 7056, provides that a court may award summary judgment only when there is no genuine dispute as to any material issue of fact to be tried, and the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In applying this standard, this Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Schwartz v. Bhd. of Maint. of Way Employees , 264 F.3d 1181, 1183 (10th Cir. 2001). The movant bears the burden of showing that no genuine issue of material fact exists. Sports Unlimited, Inc. v. Lankford Enter., Inc. , 275 F.3d 996, 999 (10th Cir. 2002). If the moving party makes a prima facie case, the burden then shifts to the non-moving party to set forth specific facts demonstrated by evidence, "from which a rational trier of fact" could find in its favor. Whitesel v. Sengenberger , 222 F.3d 861, 866 (10th Cir. 2000). If both sides are given adequate notice and an opportunity to respond, this Court may grant summary judgment for the nonmovant. Fed. R. Civ. P. 56(f)(1).
IV. DISCUSSION
A. Bankruptcy Discharge and Lien Ride Through
The effect of a bankruptcy discharge is controlled by § 524, which in relevant part provides that a discharge:
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ... of this title, whether or not discharge of such debt is waived;
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ....
11 U.S.C. § 524(a). A key part of subsection (a)(2) is that it prohibits only those actions that seek to recover from a debtor personally . This is an important distinction for secured creditors. A secured creditor with a lien on a debtor's property has two ways of collecting on that debt-the creditor can file suit against the debtor personally for damages or it can foreclose on its lien and collect payment from the proceeds of the sale of the debtor's property. The Supreme Court has held that a bankruptcy discharge eliminates the first option, an in personam claim against the debtor, but does not eliminate the latter option, an in rem action against the debtor's property. Johnson v. Home State Bank , 501 U.S. 78, 83-84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). This principle is commonly expressed through the maxim that liens "ride through" bankruptcy unaffected.
As described by one commentator, the idea of liens riding through bankruptcy is an "odd historical artifact" that reflects the original purpose of our bankruptcy law, namely a method for a debtor's unencumbered, non-exempt assets to be liquidated and distributed amongst the debtor's general unsecured and priority creditors. Ralph Brubaker, Lien Voiding or Lien *544 Pass-Through Upon Confirmation of a Chapter 11 Plan? (Part I): The Historical Origins of Lien Pass-Through Mythology , 33 Bankruptcy Law Letter, no. 12, 2013. Implicit in this understanding was the notion that bankruptcy should not impair a secured creditor's right to realize the full value of its collateral and that a bankruptcy trustee takes a debtor's assets subject to any existing liens. Id. Thus, the various bankruptcy acts passed in the United States have all contemplated "that a lien good [on the petition date] as against the debtor ... shall remain undisturbed [unless] it is one which has been obtained in contravention of some provision of the act ...." Id. (citing Hewit v. Berlin Mach. Works , 194 U.S. 296, 302, 24 S.Ct. 690, 48 L.Ed. 986 (1904) ).
The Supreme Court has been consistent in recognizing these principles. See Long v. Bullard , 117 U.S. 617, 620-21, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) (holding that a secured creditor's existing lien "was preserved notwithstanding the bankruptcy of his debtor."). "Apart from reorganization proceedings, no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt." Dewsnup v. Timm , 502 U.S. 410, 418-19, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Indeed, the Supreme Court has on occasion invalidated amendments to the bankruptcy laws that were found to unnecessarily impinge on lienholders' existing lien rights. Id. (citing cases).
This is not to say that existing liens cannot be impacted or even eliminated in a debtor's bankruptcy case. As one court put it, a more accurate description of the lien ride through maxim would be that liens "do [pass through]-unless they are brought into the bankruptcy proceedings and dealt with there." In re Penrod , 50 F.3d 459, 463 (7th Cir. 1995). For example, the Bankruptcy Code gives a trustee the power to avoid liens under various avoidance powers. See 11 U.S.C. §§ 544, 546, 547, 548. In addition, a debtor may void certain liens if they impair an exemption, and a reorganizing debtor may affect liens through a bankruptcy plan. See id. §§ 522(f), 1123, 1322. "However, to the extent liens are not avoided, paid or otherwise eliminated as part of the bankruptcy case, congressional intent is clear that valid liens may be enforced [following discharge.]" 4 Collier on Bankruptcy ¶ 524.02[d] (Richard Levin & Henry J. Sommer eds., 16th ed. 2019). In this way, the Code balances the "fresh start" policies of a bankruptcy discharge with the need to protect secured creditors' preexisting lien rights. See Dewsnup , 502 U.S. at 416, 112 S.Ct. 773.
This history demonstrates that lien "ride through" is meant to protect liens in existence on the petition date from being eliminated by a bankruptcy discharge. As such, post-discharge in rem actions are preserved "only to the extent a creditor first obtained a ... lien against a debtor's property prior to discharge." In re Paeplow , 972 F.2d 730, 735 (7th Cir. 1992) (emphasis original). During a bankruptcy case, the automatic stay will prevent a secured creditor from enforcing its existing lien. See 11 U.S.C. § 362(a)(5). After discharge enters and the automatic stay terminates, a secured creditor may proceed on an in rem basis to foreclose or otherwise execute on its existing lien. Johnson v. Home State Bank , 501 U.S. 78, 83-84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Courts have also held that clerical tasks associated with enforcing a preexisting lien are not per se violations of the discharge injunction. See 4 Collier on Bankruptcy ¶ 524.02[d] ("[I]t is not per se improper for a secured creditor to contact a debtor to send payment coupons, determine *545 whether payments will be made on the secured debt or inform the debtor of a possible foreclosure or repossession, as long as it is clear the creditor is not attempting to collect the debt as a personal liability."). Likewise, if an existing lien has a statute of limitations associated with it, courts have permitted secured creditors to take the actions necessary to extend that lien as permitted by applicable law. E.g. , McCorkle v. State of Ga. (In re McCorkle) , 209 B.R. 773, (Bankr. M.D. Ga. 1997) (holding that state taxing authority and IRS could renew their prepetition tax liens after entry of discharge without violating § 524(a) ).
While a secured creditor can enforce a prepetition lien on an in rem basis post-discharge, the lien ride through maxim does not give creditors the right to obtain a new lien against the debtor's property. See Birney v. Smith (In re Birney) , 200 F.3d 225, 228 (4th Cir. 1999) ; In re Paeplow , 972 F.2d 730, 735 (7th Cir. 1992) ; Ogburn v. Southtrust Bank (In re Ogburn) , 212 B.R. 984, 986 (Bankr. M.D. Ala. 1995) ; 4 Collier on Bankruptcy ¶ 524.02[d] ("However, a creditor whose debt is discharged is not permitted to obtain a lien, even by operation of law, if it did not hold a lien when the petition was filed."). A "lien" is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). A lien cannot be created in the absence of an underlying debt or obligation. Wagabaza v. Beveridge (In re Wagabaza) , 582 B.R. 486, 496 (Bankr. C.D. Calif. 2018) ; In re Kitzinger , No. 99C2671, 1999 WL 977076, at *2 (N.D. Ill. Oct. 22, 1999). If the underlying debt has been discharged, there is no basis to give an otherwise unsecured creditor a new interest in the debtor's post-discharge property. See In re Birney , 200 F.3d at 228.
Courts have rejected attempts by creditors to characterize such efforts as permissible "in rem actions" because, in order to obtain a new lien on a debtor's property, a creditor must necessarily establish the debtor's personal liability for the debt. In re Paeplow , 972 F.2d at 735 (finding creditors' characterization of their attempt to obtain post-discharge judgment lien incorrect because it involved establishing the personal liability of the debtors); In re Hunter , 970 F.2d 299, 311 (7th Cir. 1992) (rejecting bank's purported attempts to "proceed in rem" to obtain lien because "such a proceeding, however labeled, would involve the personal liability of the discharged debtor."). This means a creditor's efforts to obtain a new lien post-discharge is deemed to be an in personam action against the debtor-an action specifically barred by § 524(a)(2)-regardless of the label given by the creditor. See In re Paeplow , 972 F.2d at 735 ; In re Hunter , 970 F.2d at 311.
B. Judgment Liens
These principles apply with equal force to judgment liens. If a creditor holds a valid prepetition judgment lien, that lien will continue post-discharge even if the debtor's personal liability for the underlying judgment is discharged. A creditor could then execute on that lien post-discharge without violating § 524(a). See Wells Fargo Bank, N.A. v. Kopfman , 226 P.3d 1068, 1070 (Colo. 2010) (recognizing that judgment creditor's lien survived the judgment debtor's bankruptcy discharge). Many courts have further held that a judgment creditor with a valid, prepetition judgment lien can take the actions necessary to extend the statute of limitations on that lien post-discharge so that it does not expire under the applicable law. These courts characterize such an action as part of the in rem enforcement of an *546 existing lien, and, thus, not a violation of the discharge injunction. E.g. , In re Clark , 512 B.R. 906, 909 (Bankr. N.D. Ill. 2014) (finding that secured creditor's post-discharge renewal of prepetition judgment lien was an in rem action that did not violate the discharge injunction); Jarrett v. State of Ohio (In re Jarrett) , 293 B.R. 127, 133 (Bankr. N.D. Ohio 2002) ("[T]o the extent that a creditor is merely attempting to renew its lien against prepetition property of a debtor, no violation of the discharge injunction has occurred."). Extension of an existing judgment lien simply allows the judgment creditor to maintain the status quo, something that is not in conflict with the discharge injunction. In re Jarrett , 293 B.R.at 132 ; see also Morton v. Nat'l Bank of N.Y. City (In re Morton) , 866 F.2d 561, 564 (2nd Cir.1989).
On the other hand, a creditor would be prohibited from creating a new judgment lien following discharge. Johnson v. Chetto (In re Chetto) , 282 B.R. 215, 218 (Bankr. N.D. Ill. 2002) (finding that prepetition judgment lien did not attach to debtor's post-discharge wages); In re Joseph , 584 B.R. 696, 704-05 (Bankr. E.D. Ky. 2018) (holding that creditor could not create new judgment lien post-discharge "through the guise of an in rem action"). Similarly, a creditor's prepetition judgment lien will not attach to property a debtor acquires after discharge enters. In re Yates , 47 B.R. 460, 462 (D. Colo. 1985) (holding that prepetition judgment lien did not attach to property Debtor purchased post-discharge); Jarrett v. State of Ohio (In re Jarrett) , 293 B.R. 127, 133 (Bankr. N.D. Ohio 2002). Such attempts to create a new lien have been found to violate § 524(a). In re Jarrett , 293 B.R. at 133 ; In re Kitzinger , No. 99C2671, 1999 WL 977076, at *2 (N.D. Ill. Oct. 22, 1999).
C. Colorado Judgment Liens
These basic principles, while unassailable, do not fully address the situation in which the parties find themselves in this case. An understanding of Colorado's judgment lien statute is required. As stated above, Colo. Rev. Stat. § 13-52-102 provides that a judgment lien expires six years after entry of judgment unless, "prior to the expiration of such six-year period, such judgment is revived ... and a transcript of the judgment ... is recorded ...." Colo. Rev. Stat. § 13-52-102(1). The six-year term of a judgment lien is different from the term of the underlying judgment itself. A Colorado judgment has a life span of twenty years. Colo. Rev. Stat. § 13-52-102(2)(a). Read together, these provisions mean that a creditor may obtain a judgment lien at any time during the twenty-year life span of a judgment, but if more than six years have passed since the entry of judgment, the creditor must first revive the judgment. Sec. Credit Serv., LLC v. Hulterstrom , 436 P.3d 593, 596 (Colo. App. 2019).
Colorado courts have interpreted the six-year lien termination provision narrowly. If a judgment creditor allows its judgment lien to expire and it does not properly revive the judgment before the six-year period lapses, the creditor can no longer execute because its lien has expired. Mortg. Inv. Corp. v. Battle Mountain Corp. , 70 P.3d 1176, 1186 (Colo. 2003) ; Wells Fargo Bank, N.A. v. Kopfman , 226 P.3d 1068, 1070-71 (Colo. 2010). Thus, an expired judgment lien has no legal effect. In that instance, a creditor will be forced to revive its judgment and obtain a "new lien" by recording the revived judgment in the real property records. Hulterstrom , 436 P.3d at 597 n.4. The priority of this new lien is determined by the date the creditor recorded the revived judgment. Id. at 597. In contrast, if a creditor revives *547 its judgment before the end of the six-year period, then the revived judgment lien "maintains the original priority date of the originally recorded transcript of judgment because it is a continuation of the initial judgment lien, rather than a new lien ." Id. at 597 n.4 (emphasis added).
This distinction between a continuation of an existing lien and the creation of a new lien is important in this case. FLD created two judgment liens prepetition. Under the principles discussed above, those liens "rode through" the Debtor's bankruptcy case. While the six-year life span of the liens ended during the bankruptcy case, § 108(c) of the Bankruptcy Code tolled the expiration dates until thirty days after the closing of the case. FLD could have extended the life of these prepetition liens and executed on them without violating the discharge injunction if it had filed the necessary paperwork before December 2, 2016. But when FLD failed to do so, those liens were extinguished, not by operation of the Bankruptcy Code, but under Colorado law.
Thus, when FLD subsequently filed a transcript of judgment on March 7, 2017, it was no longer acting to preserve a prepetition lien. Instead its actions were an attempt (albeit an unsuccessful one) to create a new judgment lien on the Debtor's property. Absent the Debtor's bankruptcy filing, it would have been free to do so because its twenty-year judgment would have still existed. But when FLD attempted to do so post-discharge of the indebtedness, its actions violated both the discharge injunction and Colorado law. As discussed above, a new lien cannot be created in the absence of a valid debt. Birney v. Smith (In re Birney) , 200 F.3d 225, 228 (4th Cir. 1999). The Debtor's personal liability for FLD's judgments was discharged pursuant to § 524(a)(1). Because the Debtor no longer owes a debt to FLD, there is no basis to create a new judgment lien on his property. Id. ; In re Paeplow , 972 F.2d 730, 735 (7th Cir. 1992).
FLD argues it can obtain a new lien without violating § 524(a) because it is allegedly proceeding "in rem" against the Debtor's property rather than on an in personam basis. This argument misinterprets the extent of the lien ride through maxim. As discussed above, that maxim was developed to protect a secured creditor's lien rights as they existed on the petition date by allowing such liens to ride-through bankruptcy and remain post-discharge. A secured creditor is then permitted to proceed on an in rem basis (the only basis it has left) to execute on its existing lien post-discharge. In this case, those protections were afforded to FLD's prepetition judgment liens. But once those liens terminated post-discharge under state law due to FLD's failure to timely renew them, the protections of the lien-ride through also ceased. There is no concomitant rule or policy reason to protect FLD's efforts as an unsecured creditor to create a new lien post-discharge in order to collect a discharged debt. Indeed, the discharge injunction is in place to prevent such collection efforts. Because FLD is no longer a lienholder under Colorado law, it is not seeking to proceed on a purely "in rem" basis. See In re Hunter , 970 F.2d 299, 311 (7th Cir. 1992). To obtain a new lien against the Debtor's property, FLD must necessarily establish that the Debtor owes it a judgment debt. FLD cannot do so because that debt has been discharged.
FLD emphasizes that, under Colo. Rev. Stat. § 13-52-102, it still has time to "revive" its judgments because the judgments' twenty-year statutory life spans have not expired. FLD cites to two state court cases from Missouri and Illinois, both of which use similar arguments to conclude that the discharge injunction did *548 not prevent a creditor from reviving judgments and obtaining new liens post-discharge under similar state statutory provisions. See FLD Reply Brief , 2-3 (citing Meyer v. Ragar , 935 S.W.2d 97 (Mo. Ct. App. 1996) and First Nat'l Bank in Toledo v. Adkins , 272 Ill.App.3d 111, 208 Ill.Dec. 820, 650 N.E.2d 277 (1995). These cases argue that, if it is permissible for a secured creditor with an existing, prepetition lien to revive a judgment and extend that lien post-discharge, then a creditor whose lien expired post-discharge (e.g. FLD) should also be able to go through the same steps to obtain a new lien. The fact that the judgment creditor's prepetition judgment lien expired is deemed "irrelevant," so long as the creditor acts within the state law time limits to revive the underlying judgment. First Nat'l Bank in Toledo , 208 Ill.Dec. 820, 650 N.E.2d at 280.
The Court does not find these arguments or these decisions persuasive. While state-law time limits for judgment revival are important, they do not control the scope of a discharge nor the extent of the lien ride through, both of which are matters of federal bankruptcy law. The key distinction missing in the cited cases is that a secured creditor with an unexpired prepetition lien has the protection of the lien ride through and therefore can extend the life of that lien and execute on it post-discharge. On the other hand, a creditor who allows its prepetition lien to expire under state law becomes an unsecured creditor, making the lien ride through no longer applicable. At that point, the creditor is merely an unsecured creditor attempting to collect a discharged judgment through a new lien. Even if the state deadline for obtaining such a lien has not expired, the discharge injunction bars the creditor from doing so.
FLD does not cite to, nor does this Court find, any decision from this circuit that addresses precisely the facts presented in this case. The Tenth Circuit Bankruptcy Appellate Panel ("BAP") did deal with the application of the discharge injunction to a post-discharge judgment lien under New Mexico law in Sprague v. Williams (In re Van Winkle) , 583 B.R. 759 (10th Cir. BAP 2018). In that case, the creditor had obtained a prepetition judgment lien on the debtor's property. While the lien was in existence, the debtor filed a chapter 7 petition and received a discharge. Shortly thereafter the debtor passed away. During the bankruptcy case, the creditor obtained relief from stay to foreclose on its judgment lien. The creditor ultimately had the winning credit bid at the foreclosure sale, leaving a deficiency judgement of over $ 270,000. The creditor recorded this deficiency judgment in the real property records post-discharge, with a notation that it was a lien on real estate and not a personal liability of the debtor's probate estate. The personal representative of the debtor's probate estate then filed a petition to exercise the now-deceased debtor's right to redeem the property by paying the same amount as the creditor's winning bid at the foreclosure sale. The creditor objected and filed its own petition to foreclose on its deficiency judgment lien. The debtor then filed an adversary proceeding arguing that the creditor's attempt to foreclose on the deficiency judgment lien violated the discharge injunction.
The bankruptcy court held that the creditor's actions violated the discharge injunction because the creditor was attempting to execute its lien on property that the debtor's probate estate obtained post-discharge. The lower court acknowledged that the debtor owned the property when he filed bankruptcy, but held that he had lost title through the first foreclosure and that his probate estate only reacquired title through redemption, which occurred *549 well after discharge. Sprague v. Williams (In re Van Winkle) , Adv. No. 15-01047t, 2017 WL 562430, at *6 (Bankr. D.N.M. Feb. 10, 2017). The BAP reversed, holding that the redeemed property was not newly acquired property. Rather, under New Mexico law, when a debtor redeems his foreclosed property, it is deemed to "once again" become part of his real estate and is subject to all prior judgment liens. In re Van Winkle , 583 B.R. at 769 (citing Constr. Eng'g & Mfg. Co. v. Don Adams Mining Co. , 91 N.M. 238, 572 P.2d 1246, 1248 (1977) ). In other words, under New Mexico law, redemption reinstates the debtor's ownership of the subject property, and all prior judgment liens automatically revive and reattach. See Turner v. Les File Drywall , 117 N.M. 7, 868 P.2d 652, 654 (1994). Based on this law, the BAP concluded that the creditor was merely proceeding in rem to foreclose on its judgment lien on the debtor's prepetition property and did not violate the discharge injunction.
While the Van Winkle case presents an interesting factual scenario, it is not controlling in this case. The BAP relied on specific New Mexico state court case law in making its determination, which law is not applicable here. The Van Winkle case is procedurally and factually very different from this case. FLD did not foreclose on its prepetition liens, did not obtain a deficiency judgment, and the Debtor did not redeem any property. Under applicable Colorado law, FLD's prepetition judgment liens expired when it failed to renew them. Thus, nothing in Van Winkle convinces this Court it should reach a different conclusion.
D. Violation of the Discharge Injunction & Contempt
The Court concludes that FLD lost its prepetition judgment liens on December 6, 2016. At that point, it merely became an unsecured creditor of a discharged debt. It lost its ability to execute against the Debtor's property to collect on a discharged debt. Both FLD's post-discharge attempts to obtain a new lien and its continued demands for repayment of its prepetition judgments violated the discharge injunction because they were attempts to collect a discharged debt on an in personam basis from the Debtor. Paul v. Iglehart (In re Paul) , 534 F.3d 1303, 1308 (10th Cir. 2008) (stating that a violation of § 524(a) occurs where a creditors act "is one to collect a discharged debt in personam"). "The [ § 524(a) ] inquiry is objective; the question is whether the creditor's conduct had the practical, concrete effect of coercing payment of a discharged debt, and bad faith is not required." Id. Thus, even if FLD believed that it was proceeding on an allowable in rem basis, a matter the Court does not decide, the actual effect was to coerce the Debtor to pay a discharged debt in violation of § 524(a).
Whether these violations entitle the Debtor to an award of damages is another matter. There is no private right of action under § 524 for a creditor's violation of the discharge injunction. In re Otero , 498 B.R. 313, 319 (Bankr. D.N.M. 2013). Instead, a debtor's remedy lies in contempt proceedings pursuant to § 105(a). In re Paul , 534 F.3d at 1307. Under that section, this Court has the discretion to sanction a party for violation the discharge injunction if that party took some action prohibited by § 524(a)(2). Id. at 1308. "A party seeking contempt sanctions for violation of the discharge injunction has the burden of proving, by clear and convincing evidence, that the defendant (1) knew the discharge injunction was applicable and (2) intended the actions that violated the injunction."
*550 Gray v. Nussbeck (In re Gray) , 586 B.R. 347, 353 (Bankr. D. Kan. 2018).
Application of this test has caused a split of authority amongst the circuits. Some courts have held that a creditor's good faith belief that the discharge injunction does not apply precludes a finding of contempt, even if the creditor's belief is unreasonable. See Lorenzen v. Taggart (In re Taggart) , 888 F.3d 438, 444 (9th Cir. 2018), cert. granted , --- U.S. ----, 139 S. Ct. 782, 202 L.Ed.2d 511 (2019). Other circuits have held that a creditor's good faith belief is not a defense to liability for contempt, but may be asserted to limit the recovery of damages. See IRS v. Murphy , 892 F.3d 29, 39 (1st Cir. 2018). The Ninth Circuit's decision in In re Taggart is currently before the Supreme Court.
In this case, FLD admits it received notice of the entry of the Debtor's discharge. See FLD's Answer to Complaint, ¶ 17. FLD further admits it recorded the transcripts of judgment on March 7, 2017, with the intent of reviving them to obtain new judgment liens. However, FLD's good faith belief or lack thereof has not been addressed by the parties, nor has the calculation of any damages the Debtor may have suffered. Accordingly, the Court declines to rule on those issues on a summary judgment basis. This ruling is limited to granting partial summary judgment on the Debtor's first and second claims for relief and only to the extent necessary to conclude that FLD's liens expired under state law and any attempt to create a new lien has and would continue to violate the discharge injunction.
V. CONCLUSION
For the reasons stated above, FLD's Motion for Partial Summary Judgment is GRANTED in favor of Debtor and against FLD on Debtor's first and second claims for relief to the extent outlined herein. The Court will set a status conference by separate Order to set a trial date on remaining issues and to address Defendant AMT's liens.

Defendant ATM, LLC did not move for partial summary judgment.

As discussed below, the Debtor has now filed a Motion to Avoid Judicial Liens Pursuant to § 522(f). The Court has not yet ruled on that Motion, but even under the Debtor's calculations, § 522(f) would not completely void FLD's judgment liens.

All references to "section" or "§" shall refer to Title 11, United States Code, unless expressly stated otherwise.